■ Santiago Paris, Appellant, v Waterman Steamship Corporation, Respondent. Santiago Paris, Respondent, v Waterman Steamship Corporation, Appellant. [630 NYS2d 732] —Judgment, Supreme Court, New York County (Seymour Schwartz, J.), entered September 23, 1993, upon a special jury verdict in favor of plaintiff on his causes of action under the Jones Act (46 USC, Appendix § 688) and for breach of warranty of seaworthiness and general maritime law liability in the sum of $46,890 plus interest from verdict of $1,849.91 for a total of $48,739.91, unanimously affirmed, without costs. The appeals from the order of the same court (Helen E. Freedman, J.), entered January 14, 1993, directing plaintiff to appear for a mental examination and tests, and the order of the same court (Seymour Schwartz, J.), entered March 17, 1993, which ordered that such examination was to be conducted in the presence of plaintiff's attorney, dismissed, without costs, as subsumed in plaintiff's appeal from the judgment.

Judgment, Supreme Court, New York County (Carol E. Huff, J.), entered May 18, 1993, upon a special jury verdict in favor of plaintiff on the issue of maintenance and cure in the sum of $4,156,583 plus interest from verdict of $295,533.05 for a total of $4,452,116.05, unanimously reversed, on the law and the facts, plaintiff's claims for consequential damages and attorneys' fees and his claim for maintenance and cure predicated on his putative mental illness dismissed and the matter remanded for a new trial solely on plaintiff's claim for maintenance and cure predicated upon findings that he was permanently unfit for duty as of May 18, 1978, without costs.

This is an action to recover for physical and psychological injuries suffered by plaintiff, a wiper, on board the S. S. La-Salle in the port of Saigon on February 9, 1973. According to plaintiff, "[h]e was carrying paint down to the engine room on

the ladder. The other wiper left a scrapper *[sic]* at the bottom of the ladder by the machine shop. [He] tripped over the scrapper and fell to the next level below." As a result of his injuries, plaintiff was declared permanently unfit for duty as of May 18, 1978 and his seaman's papers were revoked in 1979.

On August 14, 1973, plaintiff commenced this action, pleading two causes of action; the first alleging negligence in violation of the Jones Act and the second alleging unseaworthiness. The complaint was thereafter amended on the eve of trial in 1985 by leave of court to add causes of action for maintenance, care and cure. After that trial ended in a mistrial in December 1985, the matter languished until 1992 when it was restored to the trial calendar and plaintiff's motion to bifurcate the trial was granted (Huff, J.) with plaintiff's claim for maintenance and cure tried before Justice Huff and a jury, followed by a separate trial before Justice Schwartz and a jury of plaintiff's Jones Act and unseaworthiness claims.

In retrospect, the trial court was ill advised to bifurcate these trials. The economic issues of maintenance and cure—whether plaintiff was entitled to all of the medical and psychiatric care which he claimed he needed—turned on whether, in fact, the injuries were as he claimed, which brought the factual issues of both trial under the same evidentiary umbrella (*see, FitzGerald v United States Lines*, 374 US 16 [Jones Act, unseaworthiness, and maintenance claims should be tried together; too cumbersome to try these interrelated issues separately]). Nevertheless, inasmuch as both trials have been completed and we are affirming the result of one of the trials, there is little to be done.

With regard to plaintiff's Jones Act claims tried before Justice Schwartz, defendant has not appealed the amount of the jury's verdict and we find no merit to the appellate arguments contained in plaintiff's prolix appellate brief. Stripped of their verbiage and reduced to their essential elements, plaintiff raises three principal arguments. He first contends that the trial court should have dismissed defendant's defense of contributory negligence as a matter of law, inasmuch as in reality it constituted the impermissible defense of assumption of risk; plaintiff contends in multiple subpoints that the court allowed the jury to conclude that he assumed the risk when he climbed the ladder, but that this is not a defense to a seaman's suit. This misstates the issue. Plaintiff's assumption of the risk was not in issue, nor was it placed in issue, but his contributory negligence—climbing the ladder carrying two cans despite allegedly being told not to—was in issue. As plaintiff concedes,

the question of his own negligence is a jury question. In any event, plaintiff's citation to authorities to support his point actually misstates those authorities, which address different factual scenarios, when seamen were placed in dangerous circumstances by direct orders (such as climbing a mast in stormy weather) or by the nature of the job.

As to his second claim that the trial court evidenced bias and prejudice towards him in its remarks to the jury and its marshalling of evidence, plaintiff complains that the court manifested bias by permitting defendant to adduce evidence of collateral sources (i.e., of income) in contravention of controlling law. Plaintiff refers to evidence of Social Security payments and welfare, adduced during cross-examination of himself. The major flaw in this argument is that plaintiff placed the entire question of his finances in issue on direct, particularly mentioning those sources of income. Even if he had not specifically mentioned those sources, by pleading extreme poverty in a bid for the jury's sympathy, he invited rebuttal by introduction of evidence that he was not destitute (*see, Gladden v Henderson & Co.*, 385 F2d 480, *cert denied* 390 US 1013). Further, when the information did come out, again on cross-examination, it was not in direct response to defense counsel's actual questions. In any event, this Court specifically has permitted evidence of Social Security income as a setoff against future wages (*Escobar v Seatrain Lines*, 175 AD2d 741, 745).

Finally, plaintiff's argument that the court's orders, requiring him to submit to a psychiatric examination and psychological testing during trial was improper and deprived him of due process, inasmuch as his cross-examination of the examining doctor and any rebuttal would be strictly curtailed, is likewise unavailing. Initially, the first order (Freedman, J.) was not issued ex parte, inasmuch as both the transcript and the order itself made clear that plaintiff's opposition was heard. Plaintiff's reliance upon CPLR 3121 (a) (Notice of Examination) is also misplaced inasmuch as the examination was directed by court order, thus the formalities of a party serving notice of a physical or mental examination are not in issue and the order precisely tracked CPLR 3121 by specifying the time, conditions and scope of the examination.

The claim that Justice Schwartz's subsequent order directing compliance violated CPLR 3121 by ordering this "non-medical" examination, when Justice Freedman's order had not designated the name of any examiner other than Dr. Goldstein, should be rejected. Dr. Goldstein was conducting the examination; the psychologist, acting under his direction in his

office, was administering a test, which Justice Freedman's order specifically contemplated. For that reason, plaintiff's reliance on *D'Amico v Manufacturers Hanover Trust Co.* (182 AD2d 462) is unavailing. In *D'Amico*, the plaintiff, a window washer, claimed to have been permanently injured and disabled when a ladder collapsed. Plaintiff's doctors established the injuries. Defendant sought an order compelling plaintiff to be examined by an occupational therapist to assess his ability to engage in other employment. In reversing, this Court noted that CPLR 3121 addresses medical examinations, and not occupational examinations by therapists, even though the therapist, loosely speaking, was engaged in the health profession. Although the decision used phrasing limiting the statute to examination by a designated physician, it should not be extended to preclude any examination by any non-medical health professional when such an examiner, providing only a diagnostic tool for the physician, is only acting as an agent for, and under the direction of, the designated physician.

Plaintiff, relying upon *Sentilles v Inter-Caribbean Shipping Corp.* (361 US 107) claims that the State court could not exclude 18 years worth of psychological records, which he characterizes as a violation of Federal procedural law. First, for maritime claims brought in State courts, while Federal substantive law, such as the Jones Act, would be applied, State procedural law, including control over discovery and pleadings, would apply (28 USC § 1333 [1] [Federal court has jurisdiction for admiralty cases, except that "suitors" would have all other remedies to which they otherwise would be entitled]; *Wilburn Boat v Fireman's Ins. Co.,* 348 US 310 [marine insurance claim fell within Federal jurisdiction; but as to matters not covered by admiralty law, State law controls]). Moreover, the reason for the exclusion of this testimony resulted squarely from plaintiff's counsel's consistent and contumacious refusal to abide by the court order compelling the Goldstein examination. Hence, this was a discovery matter, and the preclusion was a typical remedy in connection therewith and was not an application of substantive law. By contrast, in *Sentilles (supra),* the Supreme Court, addressing the competence of the proof, a substantive matter, concluded that under maritime law, that plaintiff did not have to prove causation with medical proof connecting the exacerbation of the seaman's tuberculosis and his job. Plaintiff's reference to *FitzGerald v Burbank & Co.* (451 F2d 670) speaks to the same point, and is equally unavailing. In terms of State procedural law, CPLR 3126 provides that the court has broad leeway, including striking claims, when a party willfully disobeys a discovery order. The Second Depart-

ment has noted that "[t]he willful and contumacious character of a party's conduct can be inferred from his repeated failures to appear for [an] examination [in that case an examination before trial] coupled with inadequate excuses for these defaults" (*Mills v Ducille*, 170 AD2d 657, 658). As the trial court noted, counsel had been duly warned.

Turning to defendant's appeal from the jury's verdict on the issue of maintenance and cure, we find that plaintiff not only failed to plead, but failed to prove a claim for consequential and punitive damages pursuant to *Cortes v Baltimore Insular Line* (287 US 367 [where the failure to provide maintenance and cure causes or aggravates an illness, the seaman may recover not only maintenance, but also compensation for the additional hurt]) or *Vaughan v Atkinson* (369 US 527 [seaman entitled to reasonable counsel fees as damages for callous failure to pay maintenance and cure]). The leading case on the subject in the Second Circuit is *Kraljic v Berman Enters.* (575 F2d 412). There the court held that punitive damages in a seaman's maintenance and cure action are limited to counsel fees and only where there is a willful refusal by the shipowner to provide maintenance and cure. Recovery of such fees is based upon the traditional theory of punitive damages.

In the instant case, neither plaintiff's 1985 amended complaint, which added his claim for maintenance and cure, nor his three bills of particulars allege that defendant's withholding of such payments was willful so as to warrant an award of punitive damages.

Any reasonable view of the evidence in this case illustrates that plaintiff's more elaborate claims of disabling psychiatric travail and permanent back injuries resulting from his slip and fall and the claims that his subsequent medical care was inadequate, were, at best, dubious, and they appear to have had a significant element of fabrication. Defendant did not terminate maintenance until plaintiff was found to be fit to return to duty. When he sought to revive claims for maintenance, in view of plaintiff's checkered history, defendant retained counsel to monitor plaintiff's condition. Medical records at the Public Health Service Hospital indicated that his pains were psychosomatic rather than physically based, that he had stress resulting from his family situation, which was compounded by this lawsuit and that the manifestations of actual disablement were dubious. Defendant's conduct was hardly of the egregious or wanton nature required for an award of enhanced damages or attorneys' fees (*see, Harper v Zapata Off-Shore Co.*, 741 F2d 87; *cf., Breese v AWI, Inc.*, 823 F2d 100).

Plaintiff, though, contends that "once there is the slightest showing of a shipowner's refusal to pay maintenance or provide cure, an issue of fact arises whether the shipowner's dereliction amounted to a willful, wanton or callous act". In effect, plaintiff contends that enhanced damages are *always* in play, regardless of the pleadings. Plaintiff cites to Federal case law which recognizes that attorneys' fees can constitute punitive damages, but this is not the issue. Elsewhere, plaintiff restates the point in terms that the "arbitrary" termination of maintenance lets the issue of enhanced damages go to the jury, which, of course, is a different point.

Plaintiff's view, that advance notice in the form of pleadings is not necessary to a claim for punitive damages or consequential damages, cannot be right, even in the unique area of maritime law. Otherwise, why even distinguish between recovery of maintenance as damages, and consequential damages: the mere refusal to pay maintenance and to provide cure would open the door to any and all damages. Logically, though, a defendant must be placed on some adequate notice that consequential damages, or punitive damages, are being sought, in order that a defense be prepared. Plaintiff's reliance upon this Court's decision in *Pires v Frota Oceanica Brasileira* (161 AD2d 129) is unavailing inasmuch as it merely indicated that wantonness, which was submitted to the jury, had been proven. Plaintiff's claim for consequential damages was insufficiently pleaded.

Nor was there any showing at trial that defendant's conduct rose to the requisite level of moral culpability warranting an award of punitive damages. Thus, the jury's award of $500,000 in attorneys' fees was without foundation. We also find the jury's award of $3 million in consequential damages unwarranted and punitive in nature and vacate it accordingly.

Finally, we deem the jury's award, totalling $656,583 for past and future medical care for plaintiff's orthopedic injury ($70,000—Feb. 9, 1973 to trial; $54,000—for future) past and future care for his putative mental illness ($30,000—Feb. 9, 1973 to trial; $99,450—for future) and past and future maintenance ($134,133—Feb. 9, 1973 to trial; $269,000—for future) excessive in that it deviates materially from what would be reasonable compensation particularly in light of the union's contractual figure of $8 per day for maintenance (*cf., Incandela v American Dredging Co.*, 659 F2d 11). Additionally, the conduct of counsel, about which he was consistently warned, the maudlin nature of plaintiff's strategy, which had nothing to do with these so-called "no fault" economic issues of maintenance and cure and the constant attacks on the defense and

appeals to sympathy, by themselves, would have warranted reversal (see, Escobar v Seatrain Lines, 175 AD2d 741, 743, supra).

We have considered the parties' other points and find them either unpreserved for review or unpersuasive. Concur—Rubin, J. P., Kupferman, Asch and Tom, JJ.