*623 OPINION OF THE COURT
Barbara Howe, J.
Plaintiff commenced this action to recover damages for injuries sustained by him on January 5, 1998. A 35-year-old electrician at the time of this incident, plaintiff fell from a ladder while installing electrical wiring on the outside of a building, and he sustained, inter alia, a severe head injury. He was in a coma for two weeks after his fall, and apparently has permanent speech, memory and balance deficits.
Pending before this court are two discovery motions. Plaintiff seeks a protective order with regard to a physical examination of him noticed by defendant B.T.S. Services, Inc. (hereafter, BTS), while BTS has cross-moved to compel that physical examination and for production of authorizations and/or documents. The dispute centers principally upon the nature and potential scope of the examination, as well as who BTS has designated to conduct the examination, although plaintiff and BTS also disagree on the latter’s demand for production of authorizations and documents.
The notice sent by BTS to plaintiff states that “a physical examination of the plaintiff, Thomas Knauer, has been scheduled at the request of [defendant BTS] on January 27, 2000 and January 28, 2000 beginning at 10:00 a.m. by Jerid Fisher, Ph.D.” (exhibit A to plaintiff’s Jan. 11, 2000 notice of motion). Plaintiff objects to the examination being conducted over two days and seeks to have Dr. Fisher, a neuropsychologist, precluded from asking him any questions that were already asked of him during his July 28, 1999 examination before trial. He also asserts that the examination must be conducted under the supervision of a physician. Finally, plaintiff opposes BTS’s ongoing requests, first made by letter dated August 27, 1999, for authorizations “to obtain (1) records from plaintiff’s expert witnesses, retained for purposes of this litigation; (2) plaintiff’s high school and post-high school educational records, which were completed more than ten years before the date of the accident; (3) records from plaintiff’s family physician as a child, with whom plaintiff had ceased treatment before the date of the accident; and (4) records from plaintiff’s prior employer, with whom he was no longer employed at the time of the accident” (Mar. 14, 2000 reply affidavit of Henry J. Nowak, Esq., attorney for plaintiff, at 2).
EXAMINATION BY DR. FISHER
Dr. Fisher is a neuropsychologist. As set out in his February 10, 2000 affidavit, the purpose of his proposed examination of *624 plaintiff “is to delineate the potential effects of a brain injury on behavior by utilizing a series of well-standardized procedures.” Dr. Fisher’s affidavit sets forth an extended discussion as to why the proposed examination, which would last between 11 and 14 hours, needs to take place over two consecutive days in order to ensure the integrity and reliability of the results. Furthermore, Dr. Fisher’s affidavit explains why the demanded educational and medical records are required for a proper neuropsychological assessment of plaintiff.
Plaintiff, relying on cases such as Greene v Xerox Corp. (244 AD2d 877), Antonelli v Yale Materials Handling Corp. (239 AD2d 951), and Rook v 60 Key Centre (237 AD2d 901), argues that any examination of plaintiff by Dr. Fisher must be supervised by a physician. In Antonelli, for example, our Appellate Division held that “nothing in the CPLR precludes psychological testing, provided that it is performed by or under the supervision of a physician (see, Rook v 60 Key Centre, 237 AD2d 901 [decided herewith], citing Paris v Waterman S. S. Corp., 218 AD2d 561, 563-564; cf., Massachusetts Bay Ins. Co. v Stamm, 237 AD2d 145)” (Antonelli v Yale Materials Handling Corp., supra [emphasis added]).
In Paris v Waterman S. S. Corp. (218 AD2d 561, 564, supra) — the Appellate Division, First Department case cited by our Appellate Division in Antonelli (supra) — the Court held that CPLR 3121 — which expressly authorizes a physical or mental examination of a party who has put his- or her physical or mental condition at issue in a lawsuit — does not preclude “examination by any non-medical health professional when such an examiner, providing only a diagnostic tool for the physician, is only acting as an agent for, and under the direction of, the designated physician.” The dispute in Paris centered, as it does in the instant case, on an examination by a psychologist.
For its part, BTS relies upon a decision by our Court of Appeals, Kavanagh v Ogden Allied Maintenance Corp. (92 NY2d 952), which was decided after the cases upon which plaintiff relies. In Kavanagh, the issue was whether plaintiff could be compelled to undergo an examination by a vocational rehabilitation expert who was not a medical doctor, and the Court of Appeals held as follows:
“Although the plain language of CPLR 3121 (a) authorizes physical or mental examinations ‘by a designated physician,’ and defendant’s vocational rehabilitation expert was not a medical doctor, CPLR 3121 does not limit the scope of general *625 discovery available, subject to the discretion of the trial court, under CPLR 3101 (see, Hoenig v Westphal, 52 NY2d 605, 609; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C310L3, at 14 [noting that CPLR 3101, and not the various provisions describing the disclosure devices, defines the scope of discovery]). That statute broadly mandates ‘full disclosure of all matter material and necessary in the prosecution or defense of an action’ (CPLR 3101 [a] [emphasis supplied]).
“The specific directives concerning the procedure for obtaining mental and physical examinations by a physician contained in CPLR 3121 (a) do not detract from a Trial Judge’s authority to act pursuant to the more general provisions which may render information discoverable (see, CPLR 3101 [a]) and obtainable (see, CPLR 3102 [a]). Indeed, the scope of these discovery statutes is very broad, consistent with New York’s policy of permitting ‘open and far-reaching pretrial discovery’ (DiMichel v South Buffalo Ry. Co., 80 NY2d 184, 193, rearg denied sub nom. Poole v Consolidated Rail Corp., 81 NY2d 835, cert denied 510 US 816). Thus, in Hoenig v Westphal, we rejected the argument that the scope of CPLR 3101 concerning the discovery of medical reports was restricted by the narrower provisions for the exchange of medical reports prepared by expert witnesses in CPLR 3121 (b) (see, Hoenig v Westphal, supra, 52 NY2d, at 609-610).” (Kavanagh v Ogden Allied Maintenance Corp., supra, at 953-954.)
Kavanagh (supra) did not address the “supervision” issue raised by plaintiff here and required by the line of cases upon which plaintiff now relies. However, inasmuch as Kavanagh permits nonmedical expert examination under CPLR 3101, I see no reason why a “supervision” requirement should be read into either such an examination or CPLR 3101. If the expert is otherwise qualified, and the examination is relevant to the issues in the case, there is nothing in CPLR 3101 which would require “supervision” by a medical expert. Thus, I conclude that the line of cases cited by plaintiff, all of which simply construe examinations under CPLR 3121, need not be followed here where Kavanagh and CPLR 3101 control.
Accordingly, plaintiff’s motion to require that Dr. Fisher’s examination be supervised by a physician is hereby denied.
With respect to plaintiff’s request that Dr. Fisher’s examination be limited to a single day, I find that the examination should proceed as Dr. Fisher deems necessary and appropriate. Certainly, Dr. Fisher’s explanation of why two consecutive *626 days are needed for examination purposes makes eminent sense, and plaintiff has not rebutted that explanation by any contradictory expert showing.
Similarly, I decline to limit the scope of “discussion” between Dr. Fisher and plaintiff during the course of the examination. Dr. Fisher shall be permitted to ask plaintiff whatever he deems necessary and appropriate, in his expert opinion, to properly carry out his neuropsychological testing of plaintiff.
RECORDS
I have carefully considered the request made by BTS for authorization for records from plaintiff, as well as the arguments advanced pro and con with respect to the relevancy and need for such documents. I am particularly guided in this regard by the views of BTS’s experts on this issue as to relevancy and need. While, in another case, there might be a cogent claim of remoteness or irrelevancy, here we are dealing with plaintiffs functioning before and after this accident, both physically and psychologically. In this context, all the records sought are arguably relevant.
My ruling specifically encompasses authorizations for the records, including “underlying raw test data” (to the extent such data exists), of Thomas Dickinson, Ralph Benedict, Alan Winship and Joseph Higgins. Plaintiff, citing Barrowman v Niagara Mohawk Power Corp. (252 AD2d 946), seeks to insulate such records by indicating that these individuals (1) were retained by plaintiff to “perform evaluations on behalf of plaintiff’ and (2) “may be called to testify as expert witnesses” on plaintiffs behalf icf., Mar. 14, 2000 reply affidavit of Henry J. Nowak, Esq., attorney for plaintiff, at 15 [emphasis added]). To date, however, no expert disclosure notice pursuant to CPLR 3101 (d) (1) (i) has been served by plaintiff (reply affidavit, op. cit., at 16 [“In the event that plaintiffs counsel decides to call these witnesses to testify at trial as expert witnesses, plaintiffs counsel will disclose these witnesses in due course and provide the requisite disclosure pursuant to CPLR §3101(d)(l)”]).
What plaintiff is attempting to do here is to prevent disclosure of relevant material which is otherwise clearly discoverable by suggesting that, sometime in the future, plaintiff “may” retain and designate these individuals as expert witnesses for the trial, thereby requiring, at that time, disclosure of a summary only of what each individual would testify to at trial. If this approach were tenable, and I conclude that it is not, a plaintiff could keep all records and reports of *627 anyone whom he or she had consulted in connection with his or her condition(s) by the simple expedient of claiming that, in the future, such person(s) might be called to give expert testimony, thereby bringing discovery to a halt. I find no statutory authority for such a procedure, and Barrowman (supra), in the present posture of this case, is inapposite.
Thus, I hereby deny plaintiffs motion for a protective order, and grant BTS’s motion to compel plaintiff to promptly furnish authorizations for all demanded records.