

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-2005

# Fagin v. Gilmartin

Precedential or Non-Precedential: Precedential

Docket No. 04-3735

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Fagin v. Gilmartin" (2005). *2005 Decisions.* Paper 20.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/20

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3735
_____

ELLEN FAGIN; JUDITH FAGIN,
derivatively and on behalf of
Merck & Co., Inc.,* a New Jersey
Corporation and Medco Health
Solutions, Inc., a Delaware Corporation,

Appellants

v.

RAYMOND V. GILMARTIN; JUDITH C. LEWENT;
WILLIAM B. HARRISON, JR.; HEIDI G. MILLER;
THOMAS E. SHENK; SAMUEL O. THIER;
MERCK & CO., INC.; RICHARD T. CLARK;
JOAN A. REED; RICHARD J. RUBINO;
LAWRENCE A. BOSSIDY; JEANETTA B. COLE;
WILLIAM N. KELLY; WILLIAM G. BOWEN;
NIALL FITZGERALD; ANNE M. TATLOCK;
EDWARD M. SKOLNICK; ARTHUR ANDERSEN, LLP

*MERCK & CO., INC., A New Jersey
Corporation and MEDCO HEALTH
SOLUTIONS, INC., a Delaware
Corporation,

Nominal Appellees

(*Amended per Clerk's Order of 2/10/05)

---

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 03-cv-02631)
District Judge: Honorable Stanley R. Chesler

---

Argued September 29, 2005

Before: ALITO, and AMBRO, <u>Circuit Judges</u>
RESTANI,* <u>Chief Judge</u>

(Opinion filed :   December 15, 2005)

Jason S. Feinstein, Esquire
Sterns & Weinroth
50 West State Street
P.O. Box 1298, Suite 1400
Trenton, NJ   08607-1298

---

* Honorable Jane A. Restani, Chief Judge, United
States Court of International Trade, sitting by designation.

Jeffrey S. Abraham, Esquire (Argued)
Abraham, Fruchter & Twersky
One Penn Plaza, Suite 2805
New York, NY   10119

2

Counsel for Appellants

Daniel J. Kramer, Esquire (Argued)
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the America
New York, NY   10019-6064

Gregory B. Reilly, Esquire
Deborah A. Silodor, Esquire
Lowenstein Sandler
65 Livingston Avenue
Roseland, NJ   07068

Counsel for Appellees

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

Plaintiffs in this derivative action allege that the officers and directors of Merck & Co., Inc. and Medco Health Solutions, Inc. violated their fiduciary duties to shareholders and failed to prevent harm to the corporations.  Shareholders bringing, on behalf of their corporations, actions derived from alleged wrongs to those entities must make demand on the boards of directors unless to do so would be futile.  Claiming demand futility as to Medco's board and in part as to Merck's board, plaintiffs made demand on Merck's board to take action as to certain of their claims.  In response, that board retained counsel

to launch a three-month investigation. Upon receiving counsel's report, the board refused plaintiffs' demand to sue. After plaintiffs filed their derivative claim, defendants attached the Merck counsel's investigatory report to their motion to dismiss. Federal Rule of Civil Procedure 12(b) requires conversion from a motion to dismiss to a motion for summary judgment when materials outside the pleadings are considered. The District Court said it excluded the report, but its analysis relied on facts that seem to come only from the report. Did the apparent inclusion of the report, which was not incorporated into plaintiffs' complaint, require that the motion to dismiss be converted into a motion for summary judgment? We believe the answer here is yes and thus remand the demand-refusal issue to be decided on summary judgment.

## I. Factual Background and Procedural History

Merck, a New Jersey corporation, is a global pharmaceutical company, and Medco, a Delaware corporation, was its wholly owned subsidiary. Plaintiffs Ellen Fagin and Judith Fagin are Merck shareholders. Defendant Raymond Gilmartin is Chairman and CEO of Merck. The other defendants are directors and officers of Merck or Medco. Arthur Andersen, Merck's former auditor, was named as a defendant initially, but plaintiffs voluntarily dismissed it from the suit.

Medco is a pharmacy benefits manager; it saves its clients money by negotiating discount rates with pharmacies. When a customer buys drugs at a pharmacy, the pharmacist checks with Medco to ensure that the customer is an approved

beneficiary. Then the customer pays a co-payment, which goes directly to the pharmacy, not to Medco.

In January 2002 Merck announced plans to spin Medco off in an initial public offering. Merck filed its first Form S-1 with the Securities and Exchange Commission for the Medco IPO on April 17 (Merck's final S-1 was not approved until July 9). In June 2002 *The Wall Street Journal* reported that Medco had been recognizing co-payments as revenue and estimated that billions of dollars in pharmacy co-payments had been recognized this way. Less than a week after this article, Merck dropped Medco's offering price. In July 2002 Merck disclosed in an amended S-1 that Medco had recognized over $14 billion in co-payment revenue from 1999 to 2002. A few days later Merck announced that it would postpone the Medco IPO indefinitely and later canceled it completely. Merck has now been sued in several securities fraud class actions.

Merck had other troubles. In 2003 the Government and several states joined in *qui tam* actions against Merck and Medco, charging various wrongful business conduct violations of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* Merck also settled an ERISA class action suit for over $40 million in December 2002.

Plaintiffs brought a derivative claim on behalf of Merck and Medco against Merck and Medco executives, charging them with unjust enrichment because their bonuses were based in part on reported revenues, the accuracy of which was their responsibility. Plaintiffs also charged the executives and directors with a breach of fiduciary duty for their roles in the

5

companies' troubles.

In September 2002 plaintiffs made demand on Merck's board for claims arising from the overstatement of Merck's revenues, but the board refused this demand in December 2002. Plaintiffs claim that demand on the Merck board for claims arising from the *qui tam* actions would be futile. They claim futility as well for any demand on the Medco board.

Plaintiffs filed their shareholder derivative complaint in New Jersey state court in May 2003, and in June 2003 the defendants removed it to the District Court for the District of New Jersey. Plaintiffs amended their complaint in July 2003. In September 2003 the defendants filed a motion to dismiss under Federal Rules 12(b)(6) and 23.1. Plaintiffs filed a cross-motion to convert the motion to dismiss into a motion for summary judgment, as the defendants had sent the Court a report created by Merck's outside counsel. The District Court granted the motion to dismiss and denied the cross-motion in August 2004. Plaintiffs now appeal to our Court.

## II. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331, as part of the claim involves the federal securities laws. It took jurisdiction of this case under 28 U.S.C. § 1441 after the case was removed from the state court. Because the Court granted a motion to dismiss under Rule 12(b)(6), we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of its grant of a 12(b)(6) motion, and "we apply the same test as the district court." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481

6

(3d Cir. 2000).  In reviewing the motion to dismiss, we must accept as true the facts alleged in the complaint and view them in the light most favorable to plaintiffs.  *Id.* at 482.

Although we normally would review the District Court's determination of demand futility for abuse of discretion, the legal precepts used by it in making that determination have been challenged, so we exercise plenary review here.  *Blasband v. Rales*, 971 F.2d 1034, 1040 (3d Cir. 1992); *see also Salve Regina Coll. v. Russell*, 499 U.S. 225, 239 (1991) ("[C]ourts of appeals [must] review the state-law determinations of district courts *de novo*.").

## III.  Discussion

### A. Would demand on Merck's board be futile?

The District Court held that plaintiffs did not establish demand futility for the claims arising from the *qui tam* actions for three reasons: (1) plaintiffs did not sufficiently plead that the directors were not independent or disinterested because of their participation in the wrongful conduct or their exposure to personal liability; (2) they did not show by particularized facts that members of Merck's board were unable to act independently because of their business and personal relationships; and (3) the complaint did not demonstrate that the Merck directors were self-interested because of their personal gain from the alleged wrongful conduct.

Plaintiffs argue that the test applied by the District Court was inapplicable because the Merck board's conduct constituted

7

an active decision not to act rather than inaction.  They also argue that, because Medco's business conduct was unlawful, Merck's directors were not exercising business judgment by allowing Medco to persist in this conduct.

In a case where state substantive law applies, we must apply the forum state's choice-of-law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941).  Under New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs. *See Brotherton v. Celotex Corp.*, 493 A.2d 1337, 1339 n.1 (N.J. Super. Ct. Law Div. 1985).  Merck is a New Jersey corporation, so we apply New Jersey law.  The New Jersey Supreme Court recently adopted Delaware's demand futility standard.  *In re PSE & G S'holder Litig.*, 801 A.2d 295, 310 (N.J. 2002).  That standard requires a plaintiff to create a reasonable doubt that either  "(1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* (adopting the test as set out in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).

For the second prong of the demand futility test, *PSE & G* adopted the gloss applied by another New Jersey court, *In re Prudential Ins. Co. Deriv. Litig.*, 659 A.2d 961 (N.J. Super. Ct. Ch. Div. 1995), *cited by PSE & G*, 801 A.2d at 310, which noted that the test's second prong does not apply to situations in which the board has not taken an action, *Prudential*, 659 A.2d at 975 (citing *Rales v. Blasband*, 634 A.2d 927 (Del. 1993)); *see also PSE & G*, 801 A.2d at 309–10.  Plaintiffs alleged that Merck's board "failed to act" by allowing

8

Medco to continue wrongful business practices and inflate revenue. The issue is therefore whether the second prong of the demand futility test applies.

In its 1993 *Rales v. Blasband* decision, 634 A.2d at 933–34, the Delaware Supreme Court created the second prong's inaction exception (later followed by *PSE & G* and *Prudential*): the demand futility test does not apply where, *inter alia*, there was no "business decision of the board," *id.* at 934. The *Rales* Court suggested that a "failure to oversee subordinates" would fall under this exception. *Id.* at 934 n.9. *Prudential* followed this suggestion, holding that a company's directors' "failure to oversee both subordinates and a subsidiary corporation" fell within the exception and thus that the second prong—whether the contested transaction was the product of a valid exercise of business judgment—did not apply. *Prudential*, 659 A.2d at 975.

Plaintiffs dispute this reading of the cases and cite a Seventh Circuit case for the propositions (1) that application of the *Rales* test is only proper when directors were "blamelessly unaware" of the conduct in question and (2) that when a corporate governance structure exists, inaction is an affirmative decision not to act. *See In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 806 (7th Cir. 2003).

The *Abbott Laboratories* opinion makes much sense, but the Seventh Circuit's interpretation of Illinois law (which purportedly follows Delaware law) is simply not controlling in New Jersey. The New Jersey Supreme Court's most recent opinion on the subject—although before *Abbott*

*Laboratories*—followed Delaware's interpretation of *Rales*. We therefore follow New Jersey's last statement on the matter and apply the *Rales* standard to plaintiffs' complaint.

As noted, under *Rales* the second prong of the demand futility test does not apply to excuse demand on the Merck board for claims stemming from the *qui tam* actions, so plaintiffs' arguments about the board's failure to exercise business judgment are unavailing. Plaintiffs may only establish demand futility by creating a reasonable doubt that the Merck directors are "disinterested and independent." They do not challenge the disinterestedness and independence of Merck's directors, so we affirm the District Court's finding that demand would not be futile.

## B. Would demand on Medco's board be futile?

Medco is a Delaware corporation, so we apply Delaware law to determine whether demand on its board was properly excused. *See Blasband*, 971 F.2d at 1047. This is a double derivative suit because Medco was Merck's subsidiary at the time the actions leading to the *qui tam* claims arose. Under Delaware law, a plaintiff must satisfy the test for demand futility for the subsidiary's board as well as for the parent's board. *Rales*, 634 A.2d at 934.

The District Court held that plaintiffs did not meet their burden of demonstrating demand futility, as their complaint failed to allege anything more than that Medco's directors were executives at the time of the alleged wrongdoing. The Court thus dismissed plaintiffs' claims against Medco.

10

Delaware law provides that demand on a board may be excused if, *inter alia*, a plaintiff creates a reasonable doubt that a majority of the directors are disinterested and independent. *Aronson*, 473 A.2d at 814–15. But the "mere threat of personal liability" for a director's actions is by itself insufficient to show that the director is not independent or disinterested. *Id.* at 815. This is similarly true for mere allegations that the directors "approved, participated, or acquiesced in a challenged transaction." *Grobow v. Perot*, 526 A.2d 914, 924 (Del. Ch. 1987), *aff'd*, 539 A.2d 180 (Del. 1988). Plaintiffs allege that demand on Medco's board would be futile because three of the four Medco directors also were its executives at the time of the alleged wrongdoings. The fact that a director is also an officer, without more, is insufficient to establish the director's interest or lack of independence. *Cf.* 2 David A. Drexler *et al.*, Delaware Corporation Law and Practice § 42.03[2][a], at 42-20 (2004).

Plaintiffs also argue that a majority of Medco's directors were neither independent nor disinterested because three of Medco's inside directors are exposed to liability through various claims against the company. A plaintiff can demonstrate interest by showing that "a corporate decision [could] have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Rales*, 634 A.2d at 936. For example, in *Rales* the Court concluded that, because another court had determined that demand futility had been established for the board, there was a "'substantial likelihood'" of the directors' liability, and that established their interest. *Id.*

Plaintiffs argue that Medco may be subject to future

11

litigation arising from its past wrongful business conduct and that this future litigation could result in personal liability, and thus interest in the outcome, for the directors. But this future litigation is different from the current suit. In *Aronson*, as in *Rales*, the directors' personal liability stemmed from the transaction challenged in the derivative suit. *Cf. id.*; *Aronson*, 473 A.2d at 815. Potential liability from other, unrelated litigation would not make Medco's directors interested in the decision to consider a demand for this specific derivative suit. For example, if Medco's directors were faced with damages from an ERISA suit, and if plaintiffs made demand on the Medco board for an unrelated claim, it is unlikely that the specter of the ERISA damages would so worry the directors as to cause them to reject plaintiffs' demand. Were that to be the standard for directors' interest, any possible future litigation could serve to create demand futility. Judgment counsels against such an open-ended course and its unintended consequences; thus we affirm the District Court's opinion as to demand futility on Medco's board. *Cf. Decker v. Clausen*, Civ. A. Nos. 10,684 & 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1999).

**C. Did Merck's board properly reject Plaintiffs' demand regarding Medco's revenue-recognition policy?**

To recap, plaintiffs made demand on the Merck board in September 2002, and the board rejected that demand three months later. The District Court held that the board properly rejected the demand, but plaintiffs challenge this holding.

New Jersey's test for whether demand was properly

rejected is "a modified business judgment rule."[1] *PSE & G*, 801 A.2d at 312. The corporation rejecting demand has the burden of demonstrating that, in the decision to reject, the directors "(1) were independent and disinterested, (2) acted in good faith and with due care in their investigation of the shareholder's allegations, and that (3) the board's decision was reasonable." *Id.* Although we agree generally with the District Court's analysis of the first and third elements of this test, some concerns about its reasoning on the second element prevent us from affirming its decision on this point at this time.

After plaintiffs made demand, Merck's board retained the law firm of Schulte Roth & Zabel, LLP to conduct an independent investigation of the issues raised in the demand letter and to advise the board what to do. Schulte Roth reviewed documents and interviewed witnesses over a three-month period, and produced a 44-page report concluding that the Merck board should reject plaintiffs' demand. In December 2002 Schulte Roth informed plaintiffs of Merck's decision to reject their demand. Plaintiffs sought a copy of this report, but Schulte Roth declined to provide it to them.

After plaintiffs filed their complaint, defendants filed a motion to dismiss for failure to state a claim and attached the Schulte Roth report to that motion. Plaintiffs filed a cross-

---

[1] We note that New Jersey's modified business judgment rule is a defense, *see PSE & G*, 801 A.2d at 312, and "the existence of a defense does not undercut the adequacy of the claim" on a Rule 12(b)(6) motion to dismiss, *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002).

13

motion to convert the motion to dismiss into a motion for summary judgment, claiming that the submission of the report—a document outside the pleadings—made the defendants' motion one for summary judgment. The District Court denied this cross-motion.

In the context of a Rule 12(b)(6) motion, if materials "outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(b). Here, the District Court expressly stated that it "exclude[d] the substance of [Schulte Roth's] report from its conclusion and thus decide[d] the motion without aid from outside materials." *Fagin v. Gilmartin*, Civ. A. No. 03-2631(SRC), slip op. at 37 (D.N.J. Aug. 20, 2004). Yet its opinion includes several pieces of information that appear to have come only from the report. The Court detailed Schulte Roth's investigation, listing the documents reviewed and the witnesses interviewed. *Id.* at 5, 28. The Court also described the length of the report and summarized the report's conclusion. *Id*. at 5–6.

What concerns us most is the District Court's analysis of the Merck board's good faith in rejecting plaintiffs' demand. The Court rested its analysis of this issue on two grounds: (1) the board's first investigation of the revenue-recognition issue and (2) the investigation undertaken by Schulte Roth. *See id.* at 27–28. The facts describing both these investigations (and even a case citation, *see id.* at 27 n.12) seem to have come from the report. (For certain, none of these facts was derived from plaintiffs' pleadings.) Thus, even if the Court excluded the "substance of the report" (allowing in only non-substantive

items like the report's length), its analysis would have been lacking without the information derived from the report.

We therefore believe that it would be better for the District Court to consider this issue on summary judgment. In so doing, we do not intrude on the Court's discretion as to the extent of discovery it needs to decide the issue.[2]

---

[2] Although the New Jersey Supreme Court's opinion in *PSE & G* makes limited discovery a mandatory part of its demand-refused procedure, *PSE & G*, 801 A.2d at 312 (stating that demand-refused shareholders "must be permitted access to corporate documents and other discovery" regarding the board's decision to reject demand), this procedural state rule does not control in federal court. Federal Rule 23.1 governs shareholder derivative actions. Among other things, it requires plaintiffs to allege that they were shareholders at the time of the transaction complained of and to state "with particularity" the efforts they have made to secure action from the directors or, alternatively, why they have not made such efforts. Fed. R. Civ. P. 23.1.

The Federal Rules generally control on the matters of procedure and are not displaced by their state counterparts unless those state rules are substantive. *See Chamberlain v. Giampapa*, 210 F.3d 154, 159 (3d Cir. 2000); *cf. Hanna v. Plumer*, 380 U.S. 460, 472–74 (1965). We can find no decision squarely on point to say whether discovery in the demand-refused situation is substantive or procedural under Federal Rule 23.1. But several questions related to other portions of Rule 23.1 have been decided. A federal court must apply a state's demand-futility exception under Rule 23.1. *See Kamen*, 500 U.S. at 108–09. Because Rule 23.1 "'speaks only to the adequacy of the shareholder representative's pleadings,'" state

15

law governs the substantive demand requirements. *Blasband*, 971 F.2d at 1047 (quoting *Kemper*, 500 U.S. at 96). The question of whether the plaintiff is a "shareholder" is determined by state law, which we have held to be substantive. *See Gallup v. Caldwell*, 120 F.2d 90, 93 (3d Cir. 1941). A state statute requiring plaintiffs to post a bond when filing a derivative action was held to apply in federal diversity actions. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 556–57 (1949). The "standard as to the specificity of facts alleged," however, is a federal standard. *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991).

Rule 23.1 does not address discovery, neither allowing nor prohibiting it, so New Jersey's mandatory-discovery rule does not directly conflict with Rule 23.1. Without a direct conflict, we must apply the *Erie* test to determine whether the New Jersey law is substantive or procedural. *Chamberlain*, 210 F.3d at 161. (Of course, judge-made state common law is just as binding as state statutes or state constitutions. 28 U.S.C. § 1652.) We therefore need to decide whether application of the state rule would be outcome determinative, while keeping in mind *Erie*'s disdain for forum shopping and inequitable administration of the laws. *Id.* at 158–59. New Jersey's mandatory-discovery rule is not *per se* outcome determinative, and the use of federal discovery law would probably not lead to forum shopping. Moreover, the use of a single federal standard on discovery would probably lead to more consistent administration of the laws—though this has not yet happened, *see* Note, *Discovery in Federal Demand-Refused Derivative Litigation*, 105 Harv. L. Rev. 1025, 1028 (1992). Also, discovery is typically a "procedural matter . . . governed by the Federal Rules." *Univ. of Tex. at Austin v. Vratil*, 96 F.3d 1337, 1340 n.3 (10th Cir. 1996) (internal quotation marks omitted); *cf.*

16

Our Court faced a related situation in *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). There, additional materials were admitted to the record on a motion to dismiss, but the district court judge "expressly limited his ruling to the face of the complaint." *Id.* The appellants claimed that the additional material converted the motion to dismiss into one for summary judgment and that, as a result, we were to review all the materials in the record. *Id.* But we held that where the district court "explicitly confines its ruling to the complaint, . . . [appellate] review is as under a motion to dismiss, even where additional materials were admitted into the record." *Id.* Here, on the other hand, the District Court included facts in its opinion that seem to come only from the report; thus to follow *Kulwicki* would be procrustean in this instance.

Merck suggests that, even if the District Court did not exclude the report, the Court was allowed to take judicial notice of that document. This is true, however, only if "the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, plaintiffs' complaint references the Merck

*Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 14 (1941).

With this backdrop, we hold that discovery in the demand-refused context is procedural, so federal law applies here. Because federal law applies, the District Court is not bound by New Jersey's mandatory-discovery rule, though (as noted above) limited discovery seems in order in the factual context of this case (including the District Court's decision).

17

board's demand-rejection process but does not explicitly discuss the report. It is mentioned in exhibits to plaintiffs' complaint, but only insofar as their counsel and Schulte Roth were arguing over access to the report. Plaintiffs did not even receive the report until after the suit was filed, so they were not able to rely on the document to frame their complaint. As such, their claims were not "based on" the report.

## IV. Conclusion

Because plaintiffs fail to show sufficiently that the Merck directors or the Medco directors were not disinterested or independent, we affirm the District Court on the issues of demand futility for Merck's and Medco's boards. We remand, however, the issue of demand refusal concerning Medco's revenue-recognition policy to the District Court for consideration on summary judgment.