07-3750-cv
Halebian v. Berv

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2010

(Argued:  February 5, 2009

Question Certified:  December 29, 2009

Certified Question Answered:  August 23, 2010

Decided:  May 6, 2011)

Docket No. 07-3750-cv

-------------------------------------

JOHN HALEBIAN,

Plaintiff-Appellant,

- v -

ELLIOT J. BERV, DONALD M. CARLTON, A. BENTON COCANOUGHER, MARK T. FINN, STEPHEN RANDOLPH GROSS, DIANA R. HARRINGTON, SUSAN B. KERLEY, ALAN G. MERTEN, R. RICHARDSON PETTIT,

Defendants-Appellees,

CITIFUNDS TRUST III,

Nominal Defendant-Appellee.[*]

-------------------------------------

Before:  SACK and PARKER, Circuit Judges, and STANCEU, Judge.[**]

Appeal from a judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, Judge) dismissing a three-count complaint arising from

_____

[*] The Clerk of Court is directed to amend the official caption as set forth above.

[**] The Honorable Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

the renegotiation of certain investment-advisory agreements.  We certified a question to the Supreme Judicial Court of Massachusetts as to the circumstances under which that State's business judgment rule may be asserted in response to a shareholder derivative suit under the Massachusetts Business Corporation Act.  Upon receipt of the answer, we affirm the district court's dismissal of two of the plaintiff's claims brought pursuant to various provisions of the Investment Company Act, 15 U.S.C. §§ 80a-15(a) & 80a-20(a), and Massachusetts state law.  Regarding the third claim — a derivative state-law claim for breach of fiduciary duty to which the certified question related and as to which the district court granted a motion to dismiss — we vacate the district court's judgment and remand with instructions to the court to convert the motion to dismiss to a motion for summary judgment, and to rule on that motion, after further discovery should the court in the sound exercise of its discretion determine that such further discovery is warranted.

Affirmed in part; vacated and remanded in part.

JOEL C. FEFFER (Daniella Quitt, James G. Flynn, on the brief), Harwood Feffer LLP, New York, NY, for Plaintiff-Appellant.

JAMES S. DITTMAR, Goodwin Procter LLP, Boston, MA (Michael K. Isenman, Matthew M. Hoffman, Goodwin Procter LLP, Washington, DC, on the brief), for Defendants-Appellees.

SACK, _Circuit Judge_:

Descriptions of the facts underlying this appeal have now been published in three different reported decisions — in the opinion of the United States District Court for the Southern District of New York, _Halebian v. Berv_ ("_Halebian I_"), 631 F. Supp. 2d 284, 287–91 (S.D.N.Y. 2007); in this Court's previous opinion certifying a question of state law to the Supreme Judicial Court of Massachusetts, _Halebian v. Berv_ ("_Halebian II_"), 590 F.3d 195, 199–203 (2d Cir. 2009); and in the opinion of the Supreme Judicial Court answering our question on certification, _Halebian v. Berv_ ("_Halebian III_"), 457 Mass. 620, 621–24, 931 N.E.2d 986, 987–89 (2010). We see no need to reiterate them here except insofar as we think it necessary to an understanding of our resolution of the narrow issues remaining before us.

**BACKGROUND**

_Halebian's Complaint_

On May 30, 2006, John Halebian, a holder of shares in one of six separate investment funds (the "Funds") within CitiFunds Trust III (the "Trust"), a Massachusetts business trust, filed a complaint raising three claims in the United States District Court for the Southern District of New York against members of the Trust's board of trustees (the "Board"). The suit arose in connection with the June 23, 2005 corporate sale (the "Transaction") of investment-adviser subsidiary

3

companies that advised the six Funds.  Pursuant to the Transaction, Citigroup, Inc., which owned the adviser subsidiaries, sold substantially all of its asset-management business to Legg Mason, Inc., automatically terminating, under federal law, the Funds' existing investment-advisory contracts. Following the sale and contract termination, the Trust's Board approved new investment-advisory agreements (the "New Agreements") between the Trust and Legg Mason and then issued a proxy statement to Trust shareholders recommending that they vote to approve the New Agreements.

In his complaint, Halebian challenges two principal aspects of the Transaction.  First, he questions the New Agreements' authorization of the payment of "soft dollars," which permitted Legg Mason to hire broker-dealers that also perform research services — a combination that often results in higher commissions for the chosen broker-dealer than those paid to standard broker-dealers.  Second, he challenges shareholder voting procedures permitting "echo voting," which in this case allows Citigroup-affiliated service agents, as record holders of certain shares of the Funds, to vote their total number of shares in proportion to the votes they received from the shares' beneficial owners, even if the service agents had not received voting instructions from all of their customers.  Halebian asserts, in sum, that the "defendants . . . failed to avail themselves of the opportunity to negotiate lower fees or seek

4

competing bids from other qualified investment advisers" and "utterly ignored their obligations of loyalty and good faith to CitiTrust and its beneficiaries." Complaint ¶¶ 35, 40, Halebian v. Berv, No. 06 Civ. 4099 (S.D.N.Y. May 30, 2006).

Halebian's Claim One, presented as a derivative claim on behalf of the Trust, alleges that the defendants breached their fiduciary duties to the Trust "in considering the . . . [T]ransaction and in recommending the new advisory agreements." Id. ¶ 54. Claims Two and Three, styled as direct claims, allege that the defendants violated federal and state law by issuing materially false and misleading statements and by omitting material information from the proxy statement as part of an effort to induce their shareholders to approve the Trust's New Agreements with Legg Mason. Id. ¶¶ 60-61, 64-65.

The Defendants' Motion to Dismiss

On October 24, 2006, the defendants' counsel moved to dismiss Halebian's complaint pursuant to, inter alia, Federal Rule of Civil Procedure 12(b)(6). Regarding Claims Two and Three, the defendants asserted that Federal Rules 12(b)(6) and 23.1, and various provisions of the Investment Company Act (the "ICA"), 15 U.S.C. §§ 80a-15(a) & 80a-20(a), required dismissal of the two claims because these claims were derivative in nature, not direct, and as such failed as a matter of law. Specifically addressing their requested dismissal of Claim One, the defendants relied in part on a then-recently enacted provision of

5

Massachusetts law codifying the business-judgment rule permitting a corporation's directors to move to dismiss a derivative lawsuit as to the prosecution of which the leadership concluded would not be in the corporation's best interest.[1] See Mass. Gen Laws ch. 156D, § 7.44(a).

### Our Prior Panel Opinion

In Halebian II, we agreed with the defendants and the district court, classifying the second and third claims asserted in the plaintiff's complaint as derivative by looking to Massachusetts law, which all agree is applicable. Halebian II, 590 F.3d at 210. We saw the gravamen of the second and third claims as Halebian's challenge to the use of echo voting. We then reasoned:

> There is no indication that the alleged unlawfulness of echo voting under section 15(a) of the ICA or Massachusetts law was called to the attention of the Board by Halebian or anyone else prior to the institution of this lawsuit. And the Board has consistently and strenuously denied that echo voting violates these laws. Since the Board was apparently not of the view, nor had it been told, that using a Citigroup-affiliated service agent other than a broker-dealer to echo vote shares violated the ICA or Massachusetts law, or indeed any law, its failure to inform shareholders to

---

[1] The nominal defendant in this action is a business trust, not a corporation. However, as the Supreme Judicial Court explained, "[b]ecause a business trust in practical effect is in many respects similar to a corporation, the statute regulating derivative actions applies to a shareholder bringing such a claim against a corporation or a business trust." Halebian III, 457 Mass. at 623 n.4, 931 N.E.2d at 988 n.4 (citation and internal quotation marks omitted).

> the contrary does not appear to us to have been potentially false and misleading so as to be cognizable under Massachusetts or federal law.

Id. (footnotes omitted). We thus expressed our inclination to affirm the judgment of the district court (Naomi Reice Buchwald, Judge) dismissing Halebian's second and third claims, but declined to resolve them at that time. We reserved decision on those claims so that we could consider any commentary or analysis that the Supreme Judicial Court of Massachusetts might offer in answering our certified question regarding Halebian's first claim. Id.

As to Halebian's undisputedly derivative first claim, which alleges a breach of fiduciary duty for failure to investigate alternatives to the New Agreements between the Trust and Legg Mason, we first rejected the district court's reliance on Federal Rule of Civil Procedure 23.1 in dismissing the claim. We were of the view that Halebian's complaint satisfied this federal pleading rule for derivative claims and, accordingly, that the claim thus "stands or falls on whether it was properly dismissed pursuant to Massachusetts substantive law." Id. at 211. On the state-law question, the district court had ruled that despite language in the state derivative-suit dismissal provision indicating that it applies only to derivative proceedings "commenced after the rejection of a demand," Mass. Gen. Laws ch. 156D, § 7.44(a) (emphasis added), the defendants could rely on the provision irrespective of the fact that the

7

plaintiff had filed suit before the Board's rejection of the demand, provided they rejected the plaintiff's demand "after a good faith review."  Halebian I, 631 F. Supp. 2d at 294.

Proffering an alternative reading,[2] but "declin[ing] to resolve [the issue] in the first instance," Halebian II, 590 F.3d at 210, we certified to the Supreme Judicial Court of Massachusetts the following question:  "Under Massachusetts law, can the business judgment rule, established under Mass. Gen. Laws ch. 156D, § 7.44, be applied to dismiss a derivative complaint filed timely under section 7.42 but prior to a corporation's

_____

[2] In our previous opinion, we expressed skepticism about the district court's approach and conclusion, first noting that "it is a well-established principle of Massachusetts law that when 'the language of the statute is clear, we must enforce it according to its own terms.'"  Halebian II, 590 F.3d at 212 (quoting Town of Milford v. Boyd, 434 Mass. 754, 757–58, 752 N.E.2d 732, 735 (2001)) (internal quotation marks omitted in original).  Though we recognized that "context matters," we were "unconvinced that the statutory context required the district court to take the path that it did."  Id. at 212–13.  In light of commentary in the legislative record that "clearly anticipates that in some instances, a corporation might require more than ninety days to investigate and respond to the shareholder's demand," we conceded that section 7.44 might apply to some instances in which a suit was filed before a board's demand rejection.  Id. at 213 (emphasis in original).  But we concluded that if section 7.44 applied to all such instances, the need for a stay — allowable by petition under section 7.43 of the statute — would be nil.  Id.  We thus reasoned that the proper reading of the statute as a whole might be that section "7.44 applies to timely derivative actions filed before the rejection of the demand that serves as the basis for the action not in all circumstances, as the district court's ruling suggests, but only when such an action was actually stayed in accordance with section 7.43."  Id.  We found this reading to be consistent with statutory commentary and, as a matter of policy, that it would not impose "an unfair hardship on Massachusetts corporations."  Id. at 213–14.

rejection of the demand that serves as the basis for the suit?"[3]

Id. at 214.

Supreme Judicial Court's Response

On August 23, 2010, the Supreme Judicial Court issued an opinion answering our certified question in the affirmative. Halebian III, 457 Mass. at 621, 931 N.E.2d at 987. The court reasoned, inter alia:

> If we were to adopt the plaintiff's assertion that the Legislature's inclusion of the phrase, "commenced after rejection of a demand," was intended to deny a corporation the benefit of the business judgment doctrine where it failed to reject a shareholder's demand before the filing of a derivative complaint, we would be giving § 7.44 an interpretation that would be in direct conflict with other language in the same section and that would be inconsistent with the statutory scheme embodied in the Act and reflected in the commentary of its drafters. For these reasons, despite the statute's unfortunate inclusion of a phrase that, when read in isolation, would suggest that § 7.44(a) was intended to limit dismissals under the business judgment doctrine to derivative proceedings "commenced after rejection of a demand," we conclude that the Legislature did not intend such a limitation. Rather, we conclude that the Legislature intended that a derivative action must be dismissed under § 7.44 following a corporation's independent determination, made in good faith and after reasonable inquiry, that maintenance of the derivative proceeding is not in the best interests of the

---

[3] We added, as is our practice, that "[t]he certified question may be deemed to cover any pertinent further issues of Massachusetts law that the Supreme Judicial Court thinks is appropriate and advisable to address, including" the issues presented by Halebian's second and third claims discussed earlier in the opinion. Halebian II, 590 F.3d at 215.

corporation, regardless whether the derivative complaint has been filed before or after the corporation's rejection of the shareholder's demand.

Id. at 632–33, 931 N.E.2d at 995.

We now resolve the instant appeal in light of the careful opinion of the Supreme Judicial Court of Massachusetts in response to our certified question.

**DISCUSSION**

I. Claims Two and Three

Because the Supreme Judicial Court said nothing in Halebian III that affects our analysis of Halebian's second and third claims as set forth in Halebian II, we affirm the judgment of the district court dismissing those claims for the reasons set forth in our prior opinion. See Halebian II, 590 F.3d at 207–10.

II. Claim One

The Supreme Judicial Court, in agreement with the district court in this case, ruled that a defendant in a derivative suit governed by Massachusetts Law may employ the business judgment rule, codified at Mass. Gen. Laws ch. 156D, § 7.44, to dismiss a shareholder complaint that is filed prior to a corporation's rejection of the demand that serves as the basis for the suit. Halebian III, 457 Mass. at 621, 931 N.E.2d at 987. It does not follow, however, that we can affirm the district court's judgment in its present form.

A. Operation of Section 7.44

As stated by the Supreme Judicial Court, the business judgment rule embodied in section 7.44 "protects a corporation's decision that prosecution of [a] claim demanded by [a] shareholder is not in the best interests of the corporation where the decision is made in good faith by independent decision makers after reasonable inquiry."[4]  Id. at 627 n.11, 931 N.E.2d at 991 n.11.  As applicable to this case after certification, section 7.44 provides that a derivative proceeding commenced either before or after rejection of a demand "shall be dismissed by the court on motion by the corporation if the court finds that . . . a majority vote of independent directors present at a meeting of the board of directors . . . has determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the proceeding is not in the best interests of the corporation."  Mass. Gen. Laws ch. 156D, §§ 7.44(a), 7.44(b)(1) (emphases added).  Upon filing its motion to dismiss, the corporation must show by "a written filing with

---

[4] In a derivative suit, of course, the plaintiff ostensibly brings his or her claims on behalf of the corporation in which he or she owns an interest, against certain corporate leadership. See 13 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 5939.  Inasmuch as it is ordinarily brought because the corporate leadership has declined to assert the claim in issue, however, the corporation is normally treated as a nominal defendant.  See Meyer v. Fleming, 327 U.S. 161, 167 (1946).  But see, e.g., Symes v. Harris, 472 F.3d 754, 761 (10th Cir. 2006) (aligning corporation as plaintiff where corporation was owned entirely by the plaintiffs and "no one within the company . . . would oppose bringing the suit").  It is not the nominal defendant "corporation" which moves to dismiss a derivative suit, but the actual defendants — e.g., board members — that make such a motion.

11

the court setting forth facts" that the corporation has established independence, good faith, and the conduct of a reasonable inquiry.  Id. § 7.44(d).  The court "shall" then "dismiss the suit unless the plaintiff has alleged with particularity facts . . . in its complaint or an amended complaint or in a written filing to the court" rebutting the corporation's filing.  Id. (emphasis added).  The statute further provides that if the independence requirement in subsection (a) is met, the plaintiff bears the burden of proving a lack of good faith and reasonable inquiry on the part of the directors; by contrast, if the independence requirement is not satisfied, the corporation must prove that those two elements are present.  Id. § 7.44(e).

In ruling on Claim One, the district court adverted to the fact that the plaintiff did not plead or otherwise proffer "any reason why the Board's decision to reject the demand was illegitimate."  Halebian I, 631 F. Supp. 2d at 296.  But we think that relying solely on the failure of the plaintiff to contest the corporation's filing omits a crucial statutory step.  The statute requires a court to "find[]" that various conditions have been satisfied: that the Board is independent, and that it in good faith determined after a reasonable inquiry that the plaintiff's suit was not in the corporation's best interests.  Mass. Gen. Laws ch. 156D, § 7.44(d).  The latter component — the existence of a good-faith, reasonable inquiry into the

12

corporation's best interests vis-à-vis the plaintiff's suit — is subject to the burden-shifting provisions of subsection (e). See id. § 7.44(e). However, that such burden-shifting turns on the independence of the decision maker unambiguously demonstrates that the court's evaluation of independence is a prerequisite to the operation of the dismissal statute in toto.[5]

---

[5] Further counseling such a conclusion is section 7.44(c), which sets out various factors, none of which "shall by itself cause a director to be considered not independent for the purposes of" section 7.44. Mass. Gen. Laws ch. 156D, § 7.44(c) (emphasis added). We infer little from the inclusion of subsection (c) apart from that the Massachusetts legislature intended for the reviewing court to consider other factors in an evaluation of independence on a motion to dismiss brought under section 7.44.

We see no such finding of independence in Halebian I.[6] Though the court's factual summary and legal discussion appear to assume the Board's independence, see id. at 290, 295-96, the statute by its own terms requires more, see Mass. Gen. Laws ch. 156D, § 7.44(a).  Supporting this reading of the statutory text, the Massachusetts Superior Court — in two of only four opinions

_____

[6] We also are not entirely in agreement with the district court's characterization of the plaintiff's opposition to the defendants' 12(b)(6) motion.  The court stated that "in opposing defendants' motion, plaintiff explicitly decline[d] to offer any reason why the rejection of the demand was illegitimate," and it expressed "concern[ about the] plaintiff's unwillingness to even attempt to engage this issue."  Halebian I, 631 F. Supp. 2d at 296 n.8.  However, we view the plaintiff's opposition to the defendants' motion to dismiss in this case in a different light.

To be sure, the plaintiff devoted much of his memorandum of law in opposition to the 12(b)(6) motion to argument for additional discovery, rather than to a direct refutation of the defendants' section 7.44 filing.  Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss Compl., Halebian v. Berv, No. 06 Civ. 4099 (S.D.N.Y. Dec. 7, 2006).  But the plaintiff made clear that his goal in seeking additional discovery was precisely to rebut the Board's assertions.  See, e.g., id. at 11 (asserting that defendants are "simultaneously acting as defendants, judge, and jury"), 12 (arguing that "discovery is necessary to address the danger of allowing the [Board] to appoint a few 'good ol' boys' as a special litigation committee [("SLC")] and have legitimate claims 'whitewashed' through the relative ease of constructing a record of apparently diligent investigation (internal quotation marks omitted)), 13 (expressing concern about the "strong potential for structural bias in" SLCs), 14 (articulating the "very serious danger that the [Board] . . . would be inherently biased and fail to investigate plaintiff's allegations against them and their fellow trustees in good faith").

Those statements are not factual assertions, and insofar as the district court rejected their value as such, the court clearly did not err.  However, in our view, the plaintiff's opposition here did not constitute an "explicit" refusal or "unwillingness" to contest the Board's assertions under section 7.44.

14

of which we are aware to discuss the statute at issue here, three of which are part of the same lawsuit — determined that in evaluating a motion to dismiss under section 7.44, the court must "begin[] with an evaluation of the independence of the" board or committee charged with responding to a shareholder demand.  Blake v. Friendly Ice Cream Corp., No. 030003, 2006 WL 1579596, at *14, 2006 Mass. Super. LEXIS 241, at *47 (Super. Ct. Hampden County May 24, 2006); see also Pinchuck v. State St. Corp., No. 09-2930, 2011 WL 477315, at *11-*13, 2011 Mass. Super. LEXIS 11, at *29-*36 (Super. Ct. Suffolk County Jan. 19, 2011).  The Blake court then embarked upon a lengthy consideration of the corporation's factual submissions purporting to demonstrate the independence of the members of its special litigation committee ("SLC") as well as the propriety of the committee's formation, evaluating their sufficiency against Massachusetts law.  See Blake, 2006 WL 1579596, at *14-*22, 2006 Mass. Super. LEXIS 241, at *47-*77; see also Pinchuck, 2011 WL 477315, at *11-*13, 2011 Mass. Super. LEXIS 11, at *29-*36 (conducting a factual inquiry into the independence of the special committee that rejected the plaintiffs' demand).  Having rejected the SLC's assertion of independence based on the court's evidentiary review, the Blake court next assessed the SLC's burden under section 7.44(e) "of proving that its determination was in good faith and after a reasonable inquiry upon which its conclusions were based." Blake, 2006 WL 1579596, at *22, 2006 Mass. Super. LEXIS 241, at

15

*78; see also Pinchuck, 2011 WL 477315, at *13-*15, 2011 Mass. Super. LEXIS 11, at *36-*42.

In light of the requirement that a deciding court, in ruling on a motion brought under section 7.44 to dismiss a derivative suit, must evaluate the movant's evidentiary submissions to determine whether the corporate entity rejecting a plaintiff's demand is independent, and because the district court did not do so in evaluating the defendants' motion under Federal Rule of Civil Procedure 12(b)(6), we vacate the court's judgment as to Claim One.

B.  Relationship Between Section 7.44 and Rule 12(b)(6)

In Halebian II, we noted that the plaintiff also pressed the argument that even assuming section 7.44 did apply to the facts of this case — a question the Supreme Judicial Court has now settled definitively in the affirmative — the district court erred by failing to convert the Board's motion to dismiss into a motion for summary judgment and in barring the plaintiff from seeking discovery before deciding such a motion.  Halebian II, 590 F.3d at 211 n.13.  We now conclude that, under the circumstances presented here, the dictates of section 7.44 are sufficiently in conflict with the contours of Federal Rule of Civil Procedure 12(b)(6) as to require the district court to complete its evaluation of this matter on remand by converting the defendants' motion to dismiss into one for summary judgment.

As we have noted, section 7.44 sets forth both substantive standards for adjudicating the effectiveness of a board's rejection of a demand and instructions regarding the procedure by which that rejection must be communicated to — and its validity established before — a court.  The dismissal procedure requires a defendant to submit various extrinsic evidentiary materials that the plaintiff may not have referenced or included within his complaint.  See Mass. Gen. Laws ch. 156D, § 7.44(d).

By contrast, the purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits."  Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted); accord LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991).  The court therefore does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under the rule.  Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).

On the other hand, of course, on a motion for summary judgment under Federal Rule of Civil Procedure 56, the parties test the substantive merits of the claim or claims and their evidentiary support based on "additional supporting material" in their possession or obtained during discovery.  Chambers v. Time

17

_Warner, Inc._, 282 F.3d 147, 154 (2d Cir. 2002); _see_ _Global Network Commc'ns_, 458 F.3d at 155 (Although Rule 12(b)(6) "assesses the legal feasibility of the complaint, [it] does not weigh the evidence that might be offered to support it.").  When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d), in order to ensure that the party against whom the motion to dismiss is made may respond.  _Cortec Indus., Inc. v. Sum Holding L.P._, 949 F.2d 42, 48 (2d Cir. 1991), _cert. denied_, 503 U.S. 960 (1992).

The procedure contemplated by section 7.44 of the Massachusetts statute does not easily fit within the constraints of Rule 12(b)(6), even as it has been broadened by occasional judicial glosses on its terms.[7]  While a dismissal pursuant to Rule 12(b)(6) is, at bottom, a declaration that the plaintiff's

---

[7] There are exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint.  For example, it is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint."  _DiFolco v. MSNBC Cable L.L.C._, 622 F.3d 104, 111 (2d Cir. 2010) (citing _Chambers_, 282 F.3d at 153).  Courts may also properly consider "matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  _Chambers_, 282 F.3d at 153 (ellipsis omitted) (quoting _Brass v. Am. Film Techs., Inc._, 987 F.2d 142, 150 (2d Cir. 1993) (dicta)).  In _Chambers_, we noted that "a plaintiff's _reliance_ on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  _Id._ (emphasis in original) (citing _Cortec_, 949 F.2d at 47–48).

complaint and incorporated materials are insufficient as a matter of law to support a claim upon which relief may be granted, see Cortec, 949 F.2d at 47, Massachusetts section 7.44 provides a procedure by which a defendant must introduce extraneous material in order to secure dismissal. The Massachusetts statute "imposes an initial burden on the corporation to come forward with facts to show it is entitled to the section's protection." Mass. Gen. Laws ch. 156D, § 7.44, cmt. 2. To avail itself of section 7.44, "the corporation is required . . . to present to the court a filing containing facts justifying application of the business judgment rule." Id.; see id. § 7.44(d); see also Blake, 2006 WL 1579596, at *11, 2006 Mass. Super. LEXIS 241, at *38 (concluding that the party moving to dismiss under section 7.44 has an "initial hurdle of showing that the [board committee which decided to reject the plaintiff's demand] was properly constituted" and also "bears the burden of submitting a written filing with the court setting forth facts to show that a majority of the Board was independent when the independent directors made their determination, and that the independent directors . . . made the determination in good faith after conducting a reasonable inquiry upon which its conclusions are based").

According to the statute, then, the corporation first must file its motion to dismiss and "make a written filing with the court setting forth facts to show . . . whether a majority of the board of directors was independent at the time of the

19

determination by the independent directors."  Id. § 7.44(d).  If, as discussed in Part II(A), above, the trial court determines that the board is independent, the plaintiff bears the burden of demonstrating that the independent directors did not make the determination "in good faith after conducting a reasonable inquiry upon which their conclusions are based."[8]  Id. §§ 7.44(d), 7.44(e).  In this scenario, "the court shall dismiss the suit unless the plaintiff has alleged with particularity facts rebutting the corporation's filing in its complaint or an amended complaint or in a written filing with the court."  Id.  Thus the state statute explicitly contemplates an additional opportunity for the plaintiff to rebut — if he or she has not done so in the original complaint — the defendant's factual showings of independence, good faith, and reasonable inquiry, either through an amended complaint or some other "written filing with the court."[9]  See Blake, 2006 WL 1579596, at *11, 2006 Mass. Super.

_____

[8] If the court concludes the board is not independent, the burden shifts to the defendant in demonstrating good faith and a reasonable inquiry.  Id. § 7.44(e).

[9] Section 7.44 permits plaintiffs to dispute by "alleg[ing] with particularity facts rebutting the corporation's filing" in three distinct ways: (1) pointing the court back to allegations made in the plaintiff's initially filed complaint; (2) filing an amended complaint; and (3) making some other "written filing." Mass. Gen. Laws ch. 156D, § 7.44(d).  In responding to a defendant's 12(b)(6) motion to dismiss in federal court, a plaintiff will generally have the ability to identify allegations in the complaint, or amend the complaint to add specific allegations, which call the purported bases for dismissal into question.  See Fed. R. Civ. P. 15(a)(1)(B), 15(a)(2).  Insofar as that is the case, section 7.44 would likely not conflict with the Federal Rules of Civil Procedure.  As, however, the instant case implicates section 7.44(d)'s third, "written filing" response —

20

LEXIS 241, at *38 ("If the SLC satisfies this burden of setting forth such facts regarding independence and the plaintiff alleges with particularity facts rebutting the SLC's written filing under § 7.44(d), the court assesses the evidence as to whether or not the SLC was independent and whether it determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that maintenance of the derivative proceeding is not in the best interests of the corporation."). Section 7.44(d) also requires that discovery be stayed upon the filing of the motion to dismiss and the required supporting materials until the court rules on the motion, unless a motion for discovery is made and "good cause" shown for "specified discovery." Mass. Gen. Laws ch. 156D, § 7.44(d).

Insofar as the section 7.44 procedure encourages or requires the parties to submit, and under which it is expected that the court will review, evidentiary materials outside the scope of what the plaintiff has already included or incorporated into his or her complaint, the section 7.44 procedure appears to be incompatible with a federal court's limited powers to grant a Rule 12(b)(6) motion to dismiss. Although we cannot foreclose the possibility that there may be cases in which the two regimes

---

and given that, in any event, section 7.44 requires an initial supplementary evidentiary filing by the moving defendant — we still view the two procedural dictates as incompatible, at least on the facts before us here. See also infra note 10 and accompanying text.

21

would not conflict,[10] this is not one of them.  The materials submitted by the defendants to comply with section 7.44 fall outside the bounds of what a federal court may properly consider on a Rule 12(b)(6) motion, and the district court _must_ examine

---

[10] For example, if a plaintiff files his or her complaint _after_ the board of directors has already formally rejected the demand, a federal district court faced with a motion to dismiss might deem the board's written rejection of the plaintiff's demand to be incorporated by reference within, or integral to, the plaintiff's complaint.  That, we surmise, would obviate one of the potential conflicts between section 7.44 and Rule 12(b)(6).  Moreover, even where a plaintiff files his complaint _before_ a board's formal rejection of his demand, there might be cases in which conversion will be unnecessary — for instance, if a court permits the plaintiff to amend her complaint after the board's rejection, the court might very well consider the written rejection to be properly incorporated by reference.  In such a circumstance, a Rule 12(d) conversion might be unnecessary to a district court's evaluation of evidence regarding the inquiries mandated by section 7.44, in light of the policies undergirding the conversion rule.  See _Cortec_, 949 F.2d at 48 ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").  Even though we decline to rule out the possibility that a case of that nature will eventually arise in this Circuit, we do note that a conclusion contrary to ours here might be in tension with Circuit law governing the incorporation of material into a complaint. See, e.g., _Global Network Commc'ns_, 458 F.3d at 157 ("In most instances where th[e 'integral to the complaint'] exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint.  The exception thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.").

In this case, though, the district court necessarily relied on the defendants' extrinsic submissions in granting dismissal to the defendants.  Although the court was careful to disclaim any consideration of materials improperly before it on a 12(b)(6) motion, see _Halebian I_, 631 F. Supp. 2d at 287 n.1, we conclude that on the instant facts, the dictates of section 7.44 made such a task impossible.

22

those materials in order to make the findings mandated by section 7.44 as a prerequisite to dismissal. Because of these unique circumstances, we instruct the district court, on remand, to adjudicate the claim within the framework of summary judgment by converting the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(d). See Fagin v. Gilmartin, 432 F.3d 276, 285 (3d Cir. 2005) (discussing a New Jersey state procedural rule applicable in shareholder derivative cases and concluding that "it would be better for the [d]istrict [c]ourt to consider [the sufficiency of the board's rejection of a shareholder demand] on summary judgment," rather than on a motion to dismiss).

C. Discovery

Although Halebian contended in the district court, and does so again on appeal, that he should have been afforded the opportunity to conduct additional discovery in order to rebut the Board's filing, under both Federal Rule 56 and section 7.44, the availability of further discovery is a matter within the district court's discretion. Cf. Fagin, 432 F.3d at 285 (noting that the appellate panel remanding to the district court for resolution by summary judgment "d[id] not intrude on the [district c]ourt's discretion as to the extent of discovery it needs to decide the issue"). While we decline to decide the question, the district court may well have acted within its discretion in denying the plaintiff's request for discovery, particularly in light of the

23

defendants' submission of "thousands of pages detailing the backgrounds of the directors at issue, as well as the extensive efforts made by the independent counsel in preparing its review of the demand for the committee and the Board." Halebian I, 631 F. Supp. 2d at 298. We nonetheless think that a reevaluation of any such application by the plaintiff for more discovery in light of Rule 56 case law and procedures would be advisable on remand.

In rejecting the plaintiffs' discovery request, the district court wrote: "Absent a specific allegation in the complaint as to why the Board was not disinterested, nor why the demand was refused, and absent a specific argument from plaintiff as to what more discovery would yield, we decline to allow plaintiff to avail himself of a premature opening of the floodgates to discovery in an effort to cure the deficiencies in the complaint."[11] Halebian I, 631 F. Supp. 2d at 298. In addition, the district court suggested that the plaintiff — even though filing his complaint before the Board's rejection — might have anticipated that he would have to make allegations about independence, and therefore could have done so in the original

[11] We note that the various allegations in plaintiff's opposition to the defendants' motion discussed in note 6, supra, seem to us to arguably present "a specific argument . . . as to what more discovery would yield," Halebian I, 631 F. Supp. 2d at 298. Whether the plaintiff's arguments on that issue are convincing, though, is a question left to the sound discretion of the district court on remand.

24

filing.[12] But we do not see how the plaintiff can be expected to have made "specific allegation[s]" in the complaint as to "why the demand was refused" when the Board had not yet taken final action on the plaintiff's demand at the time his complaint was filed. And the statute does not require the plaintiff to predict the content of the defendants' submissions on its motion to dismiss and preemptively rebut those submissions in its complaint.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court dismissing Claims Two and Three of the complaint. We vacate that portion of the district court's judgment dismissing Claim One under Rule 12(b)(6) and remand this matter to the district court for its resolution of Claim One in a manner consistent with this opinion.

---

[12] The court stated:

> We realize that the complaint could not have pled reasons why the Board's decision to reject the demand was improper in light of the fact that the complaint was filed prior to the rejection. However, the complaint could have asserted various reasons as to why the Board was constituted of interested trustees, or why the [Board's demand review committee], as constituted, was inadequate as a review mechanism for the Board.

Halebian I, 631 F. Supp. 2d at 296 n.8.

25