OPINION OF THE COURT
Bernard J. Fried, J.
In these two shareholder derivative actions, motions seeking dismissal of the complaint based on documentary evidence and *891 for failure to state a cause of action under CPLR 3211 (a) (1) and (7), have been held in abeyance pending the resolution of plaintiffs’ request for further discovery. Supplemental briefs on the discovery issue were filed, argument was held on February 17, 2012, and letters dated April 2, 2012 (nominal defendants and defendants — NYSCEF document No. 74 [Curbow/Morgan Stanley action], document No. 84 [Rotz/Van Kampen action]) and April 4, 2012 (plaintiffs — NYSCEF document No. 75 [Curbow/Morgan Stanley action], document No. 85 [Rotz/Van Kampen action]) were received. Due to the commonality of the discovery issues, resolution of these discovery requests is combined in this memorandum decision.[1]
Briefly, these two consolidated and amended shareholder derivative complaints seek similar relief.
According to the Curbow/Morgan Stanley complaint (No. 51059/2010), the action is brought on behalf of nominal defendants Invesco Insured Municipal Income Trust (formerly known as the Morgan Stanley Insured Municipal Income Trust) and Invesco Municipal Premium Income Trust (formerly known as the Morgan Stanley Municipal Income Trust) — the “Trusts” or the “Funds,” seeking damages allegedly suffered from breaches of fiduciary duty committed by the individual defendants (certain current and former trustees and executive officers of the Funds), and the Funds’ former investment advisor, defendant Morgan Stanley Investment Advisors, Inc., whose parent company is Morgan Stanley. In 2001, these Funds were sold to Invesco Ltd. and Invesco Advisers, Inc., a wholly owned subsidiary of Morgan Stanley, became the investment adviser.
The Rotz/Van Kampen complaint (No. 651060/2010) was brought on behalf of different Funds, involving different individual defendants (executive officers of the Funds), and the former investment advisor, Van Kampen Asset Management, whose parent company is Morgan Stanley. In 2001 these Funds were also sold to Invesco Ltd. and Invesco Advisers, Inc.
As is relevant here, on October 18, 2011, following filing of separate motions to dismiss in these two cases, a joint status conference was held on the respective plaintiffs’ requests that they be permitted to take limited discovery before responding to the Funds’ motions to dismiss. At that conference I authorized supplemental submissions on the subject of whether plaintiffs are entitled to take such limited discovery.
*892 In the Curbow/Morgan Stanley action, plaintiffs sent demands to the boards, followed by commencement of these consolidated actions. Thereafter, the action was stayed by stipulation to permit the Special Litigation Committee (SLC) to complete its investigation and for the boards to consider the recommendations. During this time, the plaintiffs participated in the investigation, reviewed many of the documents submitted to the SLC, and entered into a confidentiality agreement. Ultimately, the SLC issued a 377-page report, and the boards accepted the recommendation to refuse the demands and move to dismiss the action. Thereafter the stay was lifted and the Funds moved to dismiss the complaint, following which plaintiffs sought discovery. The discovery demands were not responded to, and at a conference on October 18, 2011,1 permitted plaintiffs to make this written submission for discovery before responding to the motion to dismiss.
It is undisputed that the Curbow/Morgan Stanley plaintiffs have “all the documents” (tr Feb. 12, 2011 at 14), “approximately 187, 760 pages of documents”[2] collected and reviewed by the SLC (nominal defendant’s mem of law in opposition at 4). However, only a portion of these were contained in the five exhibit volumes to the report. Although the plaintiffs are in possession of “all” the documents, due to the confidentiality agreement, the defendants offered to consent only to those documents in the “Report and the five exhibit volumes.” This offer was rejected and this application followed, which also seeks to depose members of the SLC. Although the offer was withdrawn upon the filing of this application, by letter dated April 2, 2012, the defendants in both actions, have stated that they now “have no objection to plaintiffs [Curbow and Rotz] [3] using the exhibits ... to respond to the pending motions to dismiss” (at 1).
In the Rotz/Van Kampen action, demand letters were sent in April 2010. The Funds responded and requested that the plaintiffs provide substantive information. Instead, shareholder derivative actions were filed, which were subsequently consolidated. An SLC was also established, which ultimately prepared *893 a 162-page report with two volumes of exhibits. The plaintiffs in this action do not have any of the underlying documents reviewed by the SLC; however, as noted, the Funds have now provided “the two volumes of exhibits ... as well as the other exhibits specifically referred to in the Report” (id. at 2).
A threshold issue[4] is whether New York discovery rules apply here or whether discovery is controlled by Massachusetts General Law, chapter 156D, § 7.44 (d). That subsection provides that, if the corporation moves to dismiss a derivative suit brought after rejection of a demand,
“it shall make a written filing with the court setting forth facts to show (1) whether a majority of the board of directors was independent at the time of the determination by the independent directors and (2) that the independent directors made the determination in good faith after conducting a reasonable inquiry upon which their conclusions are based.”
The statutory paragraph continues: “[T]he court shall dismiss the suit unless the plaintiff has alleged with particularity facts rebutting the corporation’s filing in its complaint or an amended complaint or in a written filing with the court.” The paragraph then provides:
“All discovery proceedings shall be stayed upon the filing by the corporation of the motion to dismiss and the filing required by this subsection until the notice of entry of the order ruling on the motion; but the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted.” (Emphasis added.)
The latter sentence concerning staying discovery is contained in the same paragraph of the statute as the other quoted statements. In other words, the presumptive stay of discovery, subject to an exception for good cause, is part of the pleading requirement in a demand-refused derivative lawsuit, under the Massachusetts statute.
The parties have cited no cases, and I have discovered none, that address the question of whether a New York court should follow the discovery rule set forth in section 7.44 (d) in a demand-refused derivative case. Because New York is the forum *894 state, New York choice-of-law principles determine whether the nature and effect of section 7.44 (d) is procedural or substantive. (See Tanges v Heidelberg N. Am., 93 NY2d 48, 54 [1999].) Under the internal affairs doctrine, “[o]nly one State should have the authority to regulate a corporation’s internal affairs— matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders —because otherwise a corporation could be faced with conflicting demands.” (Hart v General Motors Corp., 129 AD2d 179, 184 [1st Dept 1987], quoting Edgar v MITE Corp., 457 US 624, 645 [1982].) The “apparent purpose” of the Massachusetts statute is “to strengthen the role of directors in controlling matters affecting the corporation, absent specific facts to undermine the presumption that directors act with independence and in the exercise of legitimate business judgment.” (Pinchuck v Logue, slip op at 1-2, Mass Sup Ct, Dec. 9, 2009, Civ. No. 09-2930-BLS2.)
Generally, “matters of procedure are governed by the law of the forum.” (Marine Midland Bank v United Mo. Bank, 223 AD2d 119, 122 [1st Dept 1996].) New York courts have held that “matters dealing with the conduct of litigation are procedural for conflict of law purposes and are therefore governed by the law of the forum.” (19A NY Jur 2d, Conflict of Laws § 67, n 8, citing e.g. People v Greenberg, 50 AD3d 195, 198 [1st Dept 2008] [“New York courts routinely apply ‘the law of the place where the evidence in question will be introduced at trial or the location of the discovery proceeding’ when deciding privilege issues”]; accord Federal Ins. Co. v Fries, 78 Misc 2d 805, 808 [Civ Ct, NY County 1974].)
Here, however, the Massachusetts discovery provision is an integral part of the Massachusetts statute governing derivative proceedings. To me it is evident that this statute is designed to implicate the authority of the state of Massachusetts to regulate the internal affairs of a corporation organized under its laws. Therefore, I conclude that the discovery component of the substantive Massachusetts derivative action statute should be applied in this forum. This leads to the conclusion that, pursuant to section 7.44 (d), all discovery proceedings are presumptively stayed upon the filing of the motion to dismiss in a demand-refused derivative action, unless plaintiffs can show good cause to depart from that presumption.
The cases cited by plaintiffs do not require me to reach a different result. The Second Circuit’s decision in Halebian v Berv *895 (644 F3d 122 [2d Cir 2011]), does not warrant a different conclusion, since there the court expressly “ decline[d] to decide” whether the lower court had abused its discretion by refusing to give the plaintiff the opportunity for further “discovery in order to rebut the Board’s filing,” under section 7.44 (d). (Halebian, 644 F3d at 133.) The Halebian court’s subsequent suggestion in dicta that federal procedural rules might be relevant (see id.), is neither relevant nor binding. Also, the Third Circuit’s statement in a footnote in Fagin v Gilmartin (432 F3d 276 [3d Cir 2005]), a derivative action brought under New Jersey state law, that “discovery in the demand-refused context is procedural” (Fagin, 432 F3d at 285 n 2), is distinguishable, since in that case there was no statutory provision addressing discovery in the demand-refused context, as section 7.44 (d) does here.
Having concluded that the Massachusetts statutory standard for discovery in these lawsuits is the controlling law, it is evident that there is no basis to find “good cause” to order discovery as requested by the plaintiffs. In the Curbow/Morgan Stanley action, plaintiffs seek discovery of the “documents relied upon by the SLC ... to challenge the SLC’s conclusions and to oppose the Fund’s motion to dismiss.” (Mem of law at 5.) There is no challenge to the trustees’ independence. Similarly, in the Rotz/Van Kampen action, which does not name any of the trustees as a defendant, there is no claim of lack of independence; rather, the plaintiffs seek discovery because, as they argue, without “access [to] the documents analyzed by the Committee,” they “do not have a fair opportunity to oppose the motion to dismiss because they cannot challenge the Committee’s mischaracterizations of the documents.” (Mem of law at 3.) Under Massachusetts law, this is insufficient. As explained in Pin-chuck, section 7.44 (d)
“establishes] a norm that the motion to dismiss is to be decided without discovery, with a narrow exception for unusual cases. The exception, in the Court’s view, provides a safety valve for the rare case in which a plaintiff may offer evidence of some unusual circumstances that would indicate some serious risk of injustice in the absence of narrowly targeted discovery.” (Pinchuck, slip op at 2, No. 09-2930-BLS2 [exhibit 5, Index of Unreported Cases].)
Essentially, the Curbow/Morgan Stanley plaintiffs claim that without these documents they
“will not have the ability to provide the Court with their own, very different findings from the docu *896 ments relied upon by the SLC. This result would be inequitable based upon Plaintiffs’ access to the documents in connection with the SLC’s investigation and Plaintiffs’ belief that the documents and evidence strongly support Plaintiffs’ claims.” (Mem of law at 14.)
Similarly, the Rotz/Van Kampen plaintiffs claim that the documents “collected and produced to the Committee,” are necessary “to challenge the Committee’s conclusions.” (Mem of law at 3.)
Since the plaintiffs are seeking these materials (and as limited at oral argument — one deposition [tr at 41]), in order to challenge the conclusions of the SLC, not the trustees’ independence or good faith determination after conducting a reasonable inquiry — the grounds specified in the Massachusetts statute there does not appear to be “good cause shown” under section 7.44 (d). As held in Hecht v Termeer, “§ 7.44 (d) establishes ‘a norm that the motion to dismiss [a derivative action] is to be decided without discovery.’ ” (Hecht v Termeer, slip op at 2, Mass Sup Ct, Mar. 8, 2011, civ No. 2010-617-BLS1, quoting Pin-chuck, slip op at 2, No. 09-2930-BLS2.) This norm precludes “broad ranging discovery, directed generally at testing the full factual basis for the defendants’ motion [to dismiss a derivative action].” (Pinchuck, slip op at 2, No. 09-2930-BLS2.) Applying these two cases, there is no basis, under the Massachusetts statute, as interpreted by that state’s courts, to find good cause for discovery pending a decision on the motions to dismiss.
However, notwithstanding this conclusion, there is no basis not to permit the plaintiffs to utilize the documents already in the plaintiffs’ possession, notwithstanding the confidentiality agreements.[5] At argument, I explored the question with defense counsel in each of the actions, whether this was not, essentially, a dispute over a confidentiality agreement. Counsel in the Curbow /Morgan Stanley action stated “I think that if all they were looking for was the documents — looking to use were the documents they already have in their possession, we might have had a different conversation” (tr at 28). And he added, “Do we object to it strenuously? I can’t tell you we do. . . .” (Tr at 30.) In a similar vein, counsel in the Rotz/Van Kampen action, in re- *897 spouse to my question: “[i]s there any reason why the plaintiffs can’t use what they have in opposition to each motion?,” replied “if that were all we were arguing about, if that were the scope, then I think that’s a reasonable way to resolve it.” (Tr at 33.) He added that “were you to lift the Confidentiality Agreement in [Rotz/Van Kampen], I . . . don’t have an independent objection to their use in [the Rotz/Van Kampen] case.” (Tr at 35.)
Accordingly, the request for discovery is denied inasmuch as there has been no showing of good cause to satisfy the Massachusetts statute. However, the Curbow/Morgan Stanley defendants already have the documents provided to the SLC, and there has been no principled objection to my vacating the confidentiality agreement to permit these document to be used by the plaintiffs in both actions in opposing the pending motions to dismiss.
Therefore, limited to opposing this motion, the plaintiffs may use whatever documents are already in their possession, notwithstanding the confidentiality agreement.

. At the outset, I note that these motions to dismiss are not converted to, nor considered in the nature of, motions for summary judgment.

. In its memorandum of law, plaintiff states it “reviewed over 35,000 documents produced to the SLC as part of its investigation” (at 9). There is no dispute, however, that it has all the SLC documents.

. In this April 2 letter, I was notified that the Rotz/Van Kampen plaintiffs were being provided the “two volumes of exhibits, attached to the Van Kampen Special Litigation Committee Report, as well as the other exhibits specifically referred to in the Report but not attached.”

. There is no dispute that the Funds are organized as a Massachusetts business trust, and therefore these derivative lawsuits are governed by the Massachusetts Business Corporations Act.

. It is the confidentiality agreement in the Curbow/Morgan Stanley action which prevents the use; the only document provided in the Rotz/Van Kampen action was the report, as to which there is now no objection to its use.