OPINION OF THE COURT
Bernard J. Fried, J.
*301 Motion sequence numbers 002, 003, and 004 are consolidated for disposition and are disposed of in accordance with the following decision and order.
Defendants, the current and former outside directors of Citigroup, the current and former inside directors, officers and employees of Citigroup, and the nominal defendant Citigroup, move to dismiss the plaintiffs amended complaint, pursuant to CPLR 3211 (a) (1), (3), and (7), based on documentary evidence, lack of standing, and for failure to state a claim.
This is a derivative action, commenced by shareholders of Citigroup Inc. in the wake of the collateralized debt obligation (CDO) and subprime mortgage-related asset debacle which unfolded in late 2007, and which resulted in a Citigroup estimated $8-$ll billion write-down on its subprime-related assets for the fourth quarter of 2007. On December 7, 2007, plaintiff made a formal demand to Citigroup’s Board of Directors (the Board) asking that the Board sue certain current and former directors, officers, and employees for alleged breaches of fiduciary duty related to Citigroup’s subprime-related exposures. The Board formed a Demand Committee of one Citigroup outside director to investigate plaintiffs allegations, which committee hired counsel and conducted a 2V2-year investigation. The Board ultimately refused plaintiffs demand to sue. Plaintiff now seeks to pursue many of the same claims raised in his demand in his complaint. Defendants move to dismiss, asserting that in this “demand refused” case, the claims must be dismissed because plaintiff fails to plead facts to create a reasonable doubt as to the good faith or reasonableness of the Board’s investigation of the demand. Defendants also assert that plaintiff’s allegations that certain directors wasted corporate assets in engaging in the investigation of the demand to sue must be dismissed for failure to make a pre-suit demand, or to plead facts establishing futility of such a demand. Plaintiff opposes, urging that he has pleaded with particularity that his demand was wrongfully refused by the Board, which delegated the matter to a sham committee with an overburdened and unqualified single member, and to a conflicted team of lawyers, and that this was all a pretext for delay and part of a scheme to deflect and defend any shareholder claims. As to the claim that the investigation itself was a waste of corporate assets, plaintiff asserts that his initial demand, as well as a subsequent letter he sent to the Demand Committee, was sufficient to cover this claim, or that such demand would have been futile.
*302 Plaintiff is the owner and holder of common stock in Citigroup (amended complaint 1111). Citigroup is a publicly traded financial services institution that provides, through its subsidiaries and divisions, commercial and investment banking and brokerage services (id. 1f 12). From 2004 through 2007, Citigroup aggressively expanded into the CDO market, which obligations are repackaged pools of lower rated securities that are created by acquiring asset-backed securities, including residential mortgage-backed securities, and then selling rights to the cash flows from the securities in classes, or tranches, with different levels of risk and return (id. 1Í1Í 36-37, 44-49). Citigroup’s mortgage issuing subsidiaries expanded into the subprime and Alt-A mortgage market in the fall of 2005 through the summer of 2007 (id. 1i 56). In late 2007, as a result of severe dislocations in the CDO market and in the credit markets generally, and the sudden decline in the value of mortgage-backed securities (id. 1HÍ 63, 65, 67), Citigroup reported multi-billion dollar write-downs on its losses related to its subprime-secured assets (id. 1111 69, 71-72). During the fourth quarter of 2007, several officers, managers, and investment bankers were fired or resigned (id. 1i 70). From the fourth quarter of 2007 through the first quarter of 2009, Citigroup reported losses in excess of $25 billion, and asset write-downs (or the equivalent) well in excess of $65 billion (id. 11 78). The vast majority of these write-downs stemmed from holdings in mortgage-related securities, particularly in super-senior tranches of CDOs (id.).
In the wake of these events, and pursuant to Business Corporation Law § 626 (c), by letter dated December 7, 2007, plaintiff made his demand on the Board (id. 1i 150; exhibit A to amended complaint). The demand alleged breaches of fiduciary duty and mismanagement relating to Citigroup’s subprime assets and related structured finance and credit business (exhibit A to amended complaint). It alleged a wasteful $30 billion spending spree over the previous two years, a systemic failure of risk management at the senior management and Board levels which caused Citigroup to suffer billions of dollars in damages and “untold billions going forward” (id. at 2). It pointed to, among other things, Citigroup’s contingent liabilities and off-balance-sheet transactions, its losses from trading in CDOs, its management’s manipulations of reported earnings, assets, and net worth, and the write-downs that were likely to be reported in the fourth quarter (id. at 2-3). Based on this alleged misconduct, plaintiff demanded that Citigroup bring suit against *303 each present and former member of the Board serving since the release of Citigroup’s 2005 financial results, senior officers who allegedly participated, and aided and abetted, in such mismanagement, and Citigroup’s outside auditor KPMG, LLP and firms that provided appraisals for the real estate-related transactions (id. at 3). Plaintiff demanded that Citigroup seek to recover the damages suffered as a result of the mismanagement, and require the allegedly responsible individuals to account to and repay it amounts by which they were unjustly enriched at Citigroup’s expense (id. at 3-4).
Plaintiff alleges that upon receipt of his demand, Citigroup’s in-house counsel conspired with counsel for the Board, and a group of lawyers for Citigroup’s present and former Board members, to determine a strategy to best protect the defendants named in this action and all members of the Board from liability (amended complaint 1f 155).
By letter dated January 4, 2008, counsel to Citigroup’s Board informed plaintiffs counsel that the Board would consider the demand at the Board’s January 14, 2008 meeting, and asked whether there was any additional information plaintiff wanted to convey to the Board (id. 1i 156). Plaintiff’s counsel then requested that he be given the opportunity to appear before the Board at a meeting (id. 1f 157). By letter dated January 11, 2008, the Board’s counsel affirmed that the Board would consider the demand at the January 14 meeting, and informed plaintiff’s counsel that it would contact him if it wanted to hear from him in person, and asked if there was any additional written material plaintiff would like the Board to consider (id. 1i 158). By letter dated January 17, 2008, counsel to the Board indicated that the Board had reviewed the demand and subsequent correspondence by plaintiff’s counsel at the January 14 meeting, and would continue to consider the matters raised in its January 31, 2008 meeting (id. If 159).
By letter dated March 4, 2008, the Board’s counsel advised plaintiffs counsel that, at its February 28, 2008 meeting, the Board had formed a Demand Committee to investigate, review, and analyze the allegations in the demand, and had appointed Franklin A. Thomas as the sole member to the Demand Committee (id. 1i 166). The Demand Committee then retained Potter Anderson & Corroon, LLP (Potter Anderson) as its independent Delaware counsel to assist in the investigation and evaluation of the demand (id. 1111160, 164). By letter dated May 14, 2008, Potter Anderson informed plaintiffs counsel of their retention, *304 and offered to meet with plaintiff and his counsel in person (id. 1Í167). Plaintiff asserts that he never received any substantive communication from Potter Anderson, and that by the end of 2008, it had admitted that it had not consulted with an accounting or auditing expert regarding the demand (id.).
In April 2009, defendant Thomas was replaced by defendant Michael O’Neill on the Demand Committee after Thomas retired from the Board (id. 1i 168).
On July 15, 2009, plaintiff commenced this shareholder derivative action in which he claimed that his demand had been constructively and wrongfully refused by the Board. Shortly thereafter, Potter Anderson offered to meet in person with plaintiff, his counsel, and O’Neill, which meeting occurred on September 16, 2009 (id. 1ÍH 174-175).
On May 27, 2010, the Demand Committee met with the Board and provided it with its description of the committee’s process, findings, observations, and recommendations (see exhibit 1 to affirmation of Christopher B. Harwood in support, dated Oct. 1, 2010, at 7). It determined that, based on its investigation, Citigroup was unlikely to prevail if it pursued the claims in the demand, that the litigation was not in the best interests of Citigroup or its shareholders, and that the demand should be refused (id. at 6). The Board then voted unanimously to reject the demand (id. at 7).
On June 22, 2010, plaintiff filed the amended complaint in this action, alleging that the Board constructively and wrongfully refused the demand and conducted a sham investigation (amended complaint 1I1Í 150-180). The amended complaint asserts claims against various management defendants and members of the Board’s Audit and Risk Management Committee for breach of fiduciary duty, aiding and abetting such breach, and waste of corporate assets, seeking an accounting and disgorgement of all monies, profits, commissions, bonuses, and gains obtained. It includes a new cause of action against Franklin Thomas and Michael O’Neill (the Demand Committee defendants), alleging breach of fiduciary duty, aiding and abetting such breach, and waste of corporate assets by causing Citigroup to expend millions of dollars in an allegedly sham investigation (id. 1ÍH 185, 195, 200-202).
By letter dated June 25, 2010, the Board’s counsel informed plaintiff that it adopted the recommendation of the Demand Committee, and rejected plaintiffs demand in its entirety (exhibit 1 to Harwood affirmation). The Board determined that it *305 was unlikely that Citigroup would prevail if it pursued any claims against current or former officers, directors or other persons named in the demand regarding the matters raised in the demand, that such litigation would not be in the best interests of Citigroup and its shareholders, and that the demand should be rejected (id. at 4). The seven-page letter recounted the Demand Committee and Potter Anderson’s actions in investigating plaintiff’s demand, including reviewing over 17 million pages of internal Citigroup documents, conducting interviews of current and former officers, directors and employees of the company, obtaining expert advice regarding certain of the products at issue, and meeting frequently with Potter Anderson to evaluate, analyze and discuss the Demand Committee’s recommendation to the Board (id. at 4-6).
In moving to dismiss, defendants assert that the Board’s refusal of the claims raised in plaintiffs demand is protected by the business judgment rule. They contend that plaintiff fails to plead any particularized facts to raise a reasonable doubt that the Board acted independently, in an informed manner and with due care or that it conducted a reasonable investigation. They urge that plaintiffs lack of good faith allegations are conclusory and insufficient. Defendants further assert that the additional claims against the Demand Committee defendants Thomas and O’Neill must be dismissed because they were not raised in plaintiff s demand, and plaintiff fails to plead demand futility.
In order to demonstrate standing to pursue a derivative claim, a plaintiff must show that he or she has met the demand requirement. Under New York’s choice of law rules, the substantive law of the state of incorporation governs compliance with the demand requirement (Hart v General Motors Corp., 129 AD2d 179, 182-183 [1st Dept 1987], lv denied 70 NY2d 608 [1987]; David Shaev Profit Sharing Account v Cayne, 24 AD3d 154 [1st Dept 2005]). Citigroup is incorporated in Delaware, and, therefore, Delaware law governs this action (see O’Donnell v Ferro, 303 AD2d 567, 568 [2d Dept 2003]). Under Delaware Chancery Court Rule 23.1, the shareholder must allege either that the corporation’s board rejected the shareholder’s demand to sue, or allege particular facts as to why the shareholder was justified in not having made the effort to obtain board action (see Grimes v Donald, 673 A2d 1207, 1216 [Del 1996], overruled in part on other grounds Brehm v Eisner, 746 A2d 244, 253 [Del 2000]).
Plaintiff challenges defendants’ submission of the Board’s refusal letter, contending that it is not documentary evidence *306 under CPLR 3211 (a) (1), and its submission requires that these dismissal motions be converted into summary judgment motions and permit discovery. I declined plaintiff’s request to convert the motions into summary judgment (transcript of oral argument, dated Jan. 26, 2012, at 5), and can determine these motions without reference to facts not apparent on the face of the amended complaint. Defendants were obligated to submit this letter because, while it was sent to plaintiff three days after the amended complaint was filed, it establishes that this is a demand refused case, requiring a heightened pleading standard (see Scattered Corp. v Chicago Stock Exchange, Inc., 701 A2d 70, 73-74 [Del 1997], overruled in part on other grounds by Brehm v Eisner, 746 A2d at 253; Levine v Smith, 591 A2d 194, 201 [Del 1991], overruled in part on other grounds by Brehm v Eisner, 746 A2d at 253). Plaintiff does not dispute that the Board conducted an investigation which resulted in the response set forth in the refusal letter. Moreover, in resolving motions to dismiss in demand refused cases, courts routinely reference the substance of the demand refusal letters (see Scattered Corp. v Chicago Stock Exchange, Inc., 701 A2d at 76, 76 n 24 [court considered refusal letter, and stated that if the shareholders had facts to refute statements made in the refusal letter, it was their obligation to plead those facts in their complaint]; Levine v Smith, 591 A2d at 214 [court considered refusal letter and drew the “only reasonable inference” from it that the directors had acted in an informed manner in addressing the shareholder’s demand]). Accordingly, the refusal letter will be considered, and the claims in the amended complaint which arise out of plaintiffs demand will be considered under the wrongful refusal of demand standard.
Plaintiff, as a shareholder making a demand upon a board before filing suit, “ ‘tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation’ ” (Levine v Smith, 591 A2d at 212, quoting Spiegel v Buntrock, 571 A2d 767, 777 [Del 1990]). If the shareholder makes a demand and it is rejected, the board decision is entitled to the presumption of the business judgment rule, and the burden is on the shareholder to allege facts with particularity which create a reasonable doubt that the directors’ action was entitled to the protections of the business judgment rule (see Scattered Corp. v Chicago Stock Exchange, Inc., 701 A2d at 74; see also Aronson v Lewis, 473 *307 A2d 805, 808, 815 [Del 1984], overruled in part on other grounds by Brehm v Eisner, 746 A2d at 253). In determining whether the board’s decision is informed, the standard is gross negligence (Mount Moriah Cemetery v Moritz, 1991 WL 50149, *4, 1991 Del Ch LEXIS 68, *10 [Del Ch 1991], affd 599 A2d 413 [Del 1991]; see Aronson v Lewis, 473 A2d at 812).
Here, the amended complaint fails to allege particularized facts that create a reasonable doubt about the reasonableness and good faith of the Board in investigating plaintiffs demand. The amended complaint alleges that, upon receiving plaintiffs demand, plaintiff was informed by letter several times when the Board would consider the demand, and was given the opportunity to make any additional submissions for consideration (amended complaint 1Í1Í 156-160). The Board then created a Demand Committee to conduct the investigation and appointed Thomas, an outside director, as its member {id. 1Í1Í160, 162). When Thomas subsequently retired, in April 2009, the Board promptly appointed O’Neill, who had recently joined Citigroup in 2009, to the Demand Committee, and O’Neill then met with plaintiff and plaintiffs counsel in September 2009 with regard to the demand {id. 1111 168, 174-175). The amended complaint also alleges that the Demand Committee retained counsel, Potter Anderson, to assist in the investigation {id. lili 160, 167). The Demand Committee gathered and reviewed “as many as 15 million or more documents” in investigating plaintiffs claims, which was overseen by Thomas and then O’Neill {id. 1i 165). The refusal letter includes additional facts regarding the investigation undertaken by the Demand Committee, including that millions of pages of documents were reviewed; filings in numerous lawsuits concerning matters raised in the demand were also reviewed; current and former officers and directors involved in the issues and activities implicated by the demand were interviewed; publicly available information was reviewed, including testimony before the Financial Crisis Inquiry Commission; a financial expert was retained and meetings were held between that expert and Potter Anderson regarding the demand (exhibit 1 to Harwood affirmation at 4-6). These facts support defendants’ contention that the Board conducted its investigation reasonably and in good faith.
Plaintiff alleges, in a conclusory manner, that the Demand Committee was a “sham in its inception” (amended complaint 1Í 162). He contends that a committee consisting of a single member who was near to retirement and had numerous other *308 responsibilities could not plausibly undertake a good faith investigation. However, as defendants correctly contend, the fact that the committee had one member is insufficient to raise a reasonable doubt (see generally Aronson v Lewis, 473 A2d at 813 [board has power to appoint committee of one or more disinterested directors]; see also Abbey v Computer & Communications Tech. Corp., 457 A2d 368, 371 [Del Ch 1983]), particularly since the committee had Potter Anderson and a financial expert assisting in the investigation. The fact that Thomas was close to retirement, or that he and O’Neill had other obligations, also fails to raise such doubt. Outside corporate directors often serve in various capacities and have multiple responsibilities, and that, in itself, does not constitute evidence that they could not conduct a proper investigation. Moreover, the fact that Thomas was near retirement does not warrant the conclusion that he was unable to conduct a reasonable investigation, or that he was somehow beholden to the alleged officers and directors named in the complaint. The allegation in the amended complaint that Thomas was appointed “despite his personal culpability” is conclusory and unsupported by particular facts that could rise to the level of a substantial likelihood of director liability (amended complaint H 160). The “mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors”; instead, it must rise to the level of a “substantial likelihood of director liability” (Aronson v Lewis, 473 A2d at 815). Plaintiff fails to make any specific allegations that Thomas was even involved in the alleged machinations which are the subject of the complaint. Similarly, the amended complaint makes generalized conclusions that Thomas “was highly unlikely to recommend” that Citigroup take any action against the wrongdoers, and that O’Neill was “predisposed to causing [Citigroup] to fail to take any action,” and that he had a “long-held bias against shareholders” because he was part of a settlement of another unrelated shareholder derivative action. These allegations lack specificity and fail to state the basis for such conclusions. The fact that a director may have been part of a previous, unrelated settlement of a shareholder derivative action does not support the assertion that he or she is biased.
Plaintiff further contends that Potter Anderson was “conflicted counsel,” raising further doubt about the reasonableness of the investigation (plaintiffs mem in opposition at *309 21-22). Plaintiff, however, fails to explain or provide any supporting facts for the alleged conflict. The fact that John J. Roche, who was retained by the Demand Committee to recommend counsel to represent it, and who recommended Potter Anderson, had served as co-general counsel to Citigroup at the same time as defendant Charles O. Prince, III, who went on to become CEO of Citigroup and is subject to the claims in the amended complaint, does not create such a conflict (see affidavit of Matthew E. Miller in opposition 1Í 5). Also, simply because Potter Anderson had previously represented Citibank, N.A., Citigroup’s banking subsidiary, on completely unrelated matters does not create a conflict or lead to the conclusion that it was “beholden to Citigroup’s management” (plaintiffs mem in opposition at 22). Plaintiffs reliance on Stepak v Addison (20 F3d 398 [11th Cir 1994]) is misplaced. Stepak is clearly distinguishable on the facts from this case. In Stepak, the outside lawyers retained to advise the demand committee were, at the very same time, the individual defendants’ defense attorneys in criminal proceedings related to the very subject matter that the law firm was now being asked to neutrally investigate (id. at 405). This, the court held, rose to the level of gross negligence and was incompatible with the board’s fiduciary duty to inform itself (id.). Here, in contrast, there is no allegation that Potter Anderson represented any of the alleged wrongdoers, and the allegation that it had previously been retained to represent a subsidiary of Citigroup in an entirely unrelated matter is insufficient to support a viable conflict of interest argument (see Halpert Enters., Inc. v Harrison, 2008 WL 4585466, *3, 2008 US App LEXIS 22557, *11 [2d Cir 2008] [no evidence of any lingering allegiance]). Therefore, I find that plaintiff has failed to plead any particularized facts to raise a reasonable doubt that the Board here acted in an informed manner, independently, and in good faith. The business judgment rule shields the Board from further inquiry. As a result, plaintiff lacks standing to pursue the derivative claims arising out of the demand and asserted in his amended complaint.
With respect to the remaining claims alleged against defendants Thomas and O’Neill for breach of fiduciary duty, aiding and abetting such breach, and waste, which arise from the investigation conducted by the Board in response to plaintiffs demand, these claims are dismissed. These claims were not part of plaintiffs original demand. The demand addressed plaintiffs concerns regarding Citigroup’s “systemic failure of risk manage *310 ment at the Board level and within senior management, all of which has caused Citigroup to suffer billions of dollars in damages as described herein and untold billions going forward” (exhibit A to amended complaint at 2). It addressed, among other things, the write-down of $6 billion in assets as of the end of the third quarter of 2007, increases in reserves, the material overstatement of earnings, assets and net worth, off-balance-sheet transactions, and trading losses with regard to CDOs {id. at 2-3). The claims against Thomas and O’Neill target alleged waste in their conduct of the Demand Committee investigation of the allegations in the demand. They do not arise from the same set of circumstances as set forth in the demand. There was no assertion in the original demand that Citigroup file litigation against Thomas or O’Neill. In fact, they were selected to be on the Demand Committee because they were outside directors who were independent of the allegations. Contrary to plaintiffs contention, this is a new claim, a whole new assertion. The demand did not alert the Board so that it could take corrective action with regard to the yet to be conducted investigation. The references to excessive spending and waste in the demand have absolutely nothing to do with the investigation, which had not begun until months after.
Plaintiffs reliance on a subsequent letter his counsel sent to Potter Anderson on September 24, 2009, in which counsel addressed the “sham nature of the proceeding” the Board was carrying out, defendants Thomas’s and O’Neill’s alleged conflicts of interest, and the legitimacy of the investigation, is misplaced (exhibit B to affidavit of Matthew E. Miller). To constitute a proper demand under Delaware law, the communication must specifically state the identity of the wrongdoers, the wrongdoing and the damage to the corporation, and the legal action the shareholder wants the Board to take (Yaw v Talley, 1994 WL 89019, *7, 1994 Del Ch LEXIS 35, *21 [Del Ch 1994]; see Khanna v McMinn, 2006 WL 1388744, *13, 2006 Del Ch LEXIS 86, *47 [Del Ch 2006]). The party asserting that a demand was made bears the burden of proof that these essential elements are embodied in the communication Yaw v Talley, 1994 WL 89019 at *7-8, 1994 Del Ch LEXIS at *23-24). Ambiguous communications are construed against a finding of a demand (1994 WL 89019 at *8, 1994 Del Ch LEXIS at *24). Applying this analysis to plaintiffs letter, it does not constitute a demand. Although the letter does allege that Thomas and O’Neill have conflicts and challenges the legitimacy of the Demand Commit *311 tee’s investigation, and does generally describe harm to the corporation, it fails to specifically request the Board to embark upon a particular course of remedial corporate action (id.). Instead, plaintiffs counsel just indicated that “our client expects to look to the responsible persons/parties to recover the assets of Citigroup wrongly taken/wasted” (exhibit B to affidavit of Matthew E. Miller at 3). This ambiguous statement falls short of expressly demanding that the Board take remedial action with regard thereto (Yaw v Talley, 1994 WL 89019, *7, 1994 Del Ch LEXIS 35, *22 [“(f)or an action to constitute a valid demand, it must embody a specific request for the board to take legal action on behalf of the corporation”]). It should also be noted that plaintiffs September 24, 2009 letter was only directed to counsel for the Demand Committee, rather than to the full Board. The letter, therefore, fails to satisfy the legal requirements for a demand.
Next, plaintiff contends, alternatively, that demand with regard to these new claims would be futile. Plaintiff, however, fails to expressly plead in his amended complaint that a demand on these new claims would have been futile. In addition, he fails to support his assertion of demand futility. Under the two-part test set forth in Aronson v Lewis (473 A2d at 814) demand futility is sufficiently alleged where the allegations raise a reasonable doubt as to whether (1) the majority of directors are independent and disinterested, and (2) where a specific board decision is challenged, that the decision was the product of a valid exercise of business judgment (see also In re Bear Steams Cos., Inc. Sec., Derivative, & ERISA Litig., 763 F Supp 2d 423, 540-541 [SD NY 2011]). This test requires a fact-intensive determination as to whether the pleadings allege a lack of independence or disinterestedness of a majority of the directors sitting at the time of the commencement of the derivative claim at issue (see Aronson v Lewis, 473 A2d at 810; Khanna v McMinn, 2006 WL 1388744, *14, 2006 Del Ch LEXIS 86, *51-53 [2006], supra). Conclusory allegations of a lack of independence will not prevail (In re INFOUSA, Inc. Shareholders Litig., 953 A2d 963, 985 [Del Ch 2007]; Khanna v McMinn, 2006 WL 1388744, *15, 2006 Del Ch LEXIS 86, *55 [2006], supra; see also Brehm v Eisner, 746 A2d 244, 267 [2000] [complaint dismissed as it was a blunderbuss of mostly conclusory allegations]). Allegations of waste do not automatically excuse the requirement to make a demand (In re INFOUSA, Inc. Shareholders Litig., 953 Au2d at 986).
*312 As applied here, plaintiff must allege particularized facts sufficient to raise a reasonable doubt regarding the disinterestedness and independence of a majority of the directors sitting on the Board at the time of the amended complaint on June 22, 2010, which he has failed to do. In fact, the amended complaint fails to plead even who were the directors on the Board at that time, except for O’Neill. Defendants assert that, by that time, nine new independent directors had been added to the Board of 15 members (exhibit 3 to affirmation of Rory A. Leraris, dated Sept. 6, 2011, Citigroup’s 2010 Annual Report on Form 10-K, at 308). Moreover, as determined above, these new claims relating to the investigation of the original demand were not already validly in litigation — they were not part of his original demand or his original complaint filed in July 2009. Again, this was not essentially the same as the acts or transactions challenged in the original complaint and demand regarding Citigroup’s investment decisions in risky mortgage-backed assets. Because these claims were never validly in litigation, plaintiff was required to plead demand futility regarding the new Board as of June 2010 (see Braddock v Zimmerman, 906 A2d 776, 786 [Del 2006]; In re Citigroup Inc. Shareholder Derivative Litig., 788 F Supp 2d 211, 213 [SD NY 2011] [applying Braddock and dismissing complaint with prejudice because plaintiff failed to plead demand futility regarding board that existed at time amended complaint was filed]). To the extent that any allegations regarding independence and disinterestedness of the Board have been made, they are generalized and lack the required specificity (see Aronson v Lewis, 473 A2d at 816; In re J.P. Morgan Chase & Co. Shareholder Litig., 906 A2d 808, 824 [Del Ch 2005], affd 906 A2d 766 [Del 2006] [demand not excused where plaintiff could not prove majority of directors was either not independent or interested]). Plaintiff has failed to sufficiently allege extraneous considerations or influences on the directors such that the directors could be considered “interested,” that is, that they would receive a personal financial benefit separate from any benefit the shareholders enjoyed from a transaction with respect to which they, as Board members, were obligated to exercise their independent business judgment (see Rales v Blasband, 634 A2d 927, 936 [Del 1993]).
With respect to the second prong of the Aronson test, the alleged wrong here was waste in the conduct of the investigation. The outer limits of corporate waste “are confined to unconscionable cases where directors irrationally squander or give away *313 corporate assets” (Brehm v Eisner, 746 A2d at 263). As determined above, the amended complaint does not allege particularized facts indicating that the investigation was a waste of corporate assets (see Aronson v Lewis, 473 A2d 805 [1984], supra). Plaintiff fails to raise a reasonable doubt that the Board’s actions in pursuing the investigation in the manner it did were in good faith, and that the investigation was conducted in a reasonable manner. Therefore, plaintiff clearly has failed in his efforts to allege demand, futility, and the remaining claims of the amended complaint also are dismissed.
Plaintiffs request for leave to replead is denied. Plaintiff fails to provide an evidentiary basis for a further amendment of his already amended complaint.
Accordingly, it is ordered that the defendants’ motions to dismiss the amended complaint are granted and the complaint is dismissed in its entirety, with costs and disbursements to defendants as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly.