[987 NYS2d 19]

Stanley Lerner, Derivatively on Behalf of Nominal Defendant Citigroup Inc., Appellant, v Charles O. Prince, III, et al., Respondents, and Citigroup Inc., Nominal Defendant-Respondent.

First Department, May 22, 2014

---

### APPEARANCES OF COUNSEL

*Greenfield & Goodman LLC*, New York City (*Richard D. Greenfield* of counsel), for appellant.

*Cravath, Swaine & Moore LLP*, New York City (*Richard W. Clary* and *Rory A. Leraris* of counsel), for respondents.

*Paul, Weiss, Rifkind, Wharton & Garrison LLP*, New York City (*Brad S. Karp, Richard A. Rosen* and *Susanna M. Buergel* of counsel), for Charles O. Price and others, respondents.

*Wachtell, Lipton, Rosen & Katz*, New York City (*Lawrence B. Pedowitz* and *Bradley R. Wilson* of counsel), for Citigroup Inc., respondent.

### OPINION OF THE COURT

Moskowitz, J.

This purported shareholder derivative action arose out of the subprime mortgage crisis meltdown and the financial crisis that followed. Plaintiff Stanley Lerner is a shareholder of nominal defendant Citigroup Inc., a Delaware corporation with its principal place of business in New York. At the end of the third quarter of 2007, Citigroup reported multi-billion dollar asset write-downs stemming from its holdings in mortgage-related securities. In late 2007, plaintiff made a formal pre-suit demand on Citigroup's board of directors (the Board), asking that the Board sue senior management, including present and former Citigroup officers and directors, for alleged mismanagement of the company's subprime assets.

In early 2008, the Board informed plaintiff that it would consider the demand at a future meeting, and gave him opportunities to make further submissions in support of the demand. However, plaintiff made no such submissions. In March 2008, the Board informed plaintiff that it had formed a committee (the demand committee) to investigate and analyze the allegations in the demand. The Board appointed defendant Franklin A. Thomas as the sole member of the demand committee and retained nonparty Potter Anderson & Corroon LLP as its independent counsel. After Thomas retired from the Board in April 2009, the Board replaced him with defendant Michael E. O'Neill, who had recently joined Citigroup as a director, as the sole member of the demand committee.

Plaintiff commenced this action in July 2009. Potter Anderson offered to meet in person with plaintiff, his counsel, and O'Neill; that meeting occurred on September 16, 2009. On May 27, 2010, the demand committee met with the Board and recommended that the Board refuse the demand—a recommendation that the Board unanimously accepted.

By amended complaint dated June 22, 2010, plaintiff alleged that the single-member demand committee was a "sham in its inception" and that the Board's more than two-year delay in responding to the demand constituted constructive and wrongful refusal. Accordingly, plaintiff asserted causes of action including breach of fiduciary duty and aiding and abetting breaches of fiduciary duty. Plaintiff also alleged that defendants had wasted corporate assets by causing Citigroup to expend millions of dollars in an investigation that was allegedly a sham.

By letter dated June 25, 2010 (the refusal letter), three days after the date of the amended complaint, the Board's counsel informed plaintiff that on May 27, 2010, it had unanimously adopted the demand committee's recommendation to reject plaintiff's demand. Defendants invited plaintiff on more than one occasion to amend his pleadings further to take the refusal letter into account; however, plaintiff declined to do so, insisting that a further amendment was unnecessary because the amended complaint already anticipated the Board's refusal of the demand.

In October 2010, defendants moved to dismiss the amended complaint, asserting that the Board's refusal of the demand, undertaken after a thorough investigation, was protected under

the business judgment rule.[1] Further, defendants argued, plaintiff had failed adequately to plead facts creating a reasonable doubt as to the good faith or reasonableness of the Board's investigation and its refusal of the demand. The outside director defendants submitted the June 25, 2010 refusal letter as an exhibit to their motion.

On November 9, 2010, before the IAS court had decided defendants' motion to dismiss, plaintiff served document requests on defendants. On or about December 1, 2010, defendants refused to produce any documents, objecting to the document requests on the ground, among others, that plaintiff was not entitled to discovery under either Delaware or New York law on a pre-answer motion to dismiss.

In January 2011, plaintiff moved to compel the requested discovery and to convert defendants' dismissal motions to summary judgment motions. In May 2011, the IAS court denied the motion to compel and convert, finding that there was no basis to permit discovery. Further, the court found, there appeared to be no reason for the court to exercise its discretion and convert the pre-answer motion to a motion for summary judgment.

Next, by order entered May 17, 2012, the IAS court granted defendants' motions to dismiss the amended complaint without leave to replead (36 Misc 3d 297 [2012]). In so doing, the court first found that under New York State's choice-of-law rules, the substantive law of the state of incorporation governs compliance with the demand requirement. Thus, because Citigroup was incorporated in Delaware, Delaware law governed the action. The court also found that even though the refusal letter postdated the amended complaint, defendants had been obliged to submit the refusal letter on their motions because it established that the action was a "demand refused" action, requiring a heightened pleading standard (36 Misc 3d at 306).[2] Moreover, the IAS court, citing *Scattered Corp. v Chicago Stock*

---

1. While plaintiff requested leave to replead in opposition to defendants' motions, the motion court denied his request, noting that plaintiff "fail[ed] to provide an evidentiary basis for a further amendment of his already amended complaint" (36 Misc 3d 297, 313 [Sup Ct, NY County 2012, Fried, J.]).

2. Under Delaware law, different pleading requirements apply depending on whether a shareholder: (1) makes a demand on a corporation before bringing suit and the corporation refuses the demand (demand-refused cases); or (2) does not make a demand before bringing suit, claiming that the demand would be futile (demand excused or demand futile cases) (*see Levine v Smith*, 591 A2d 194, 197, 212 [Del 1991], *revd in part on other grounds by Brehm v Eisner*, 746 A2d 244, 253 [Del 2000]).

*Exch., Inc.* (701 A2d 70, 76 and n 24 [Del 1997], *revd in part on other grounds by Brehm v Eisner*, 746 A2d 244, 253 [Del 2000]), noted that, in resolving motions to dismiss in demand-refused cases, "courts routinely reference[d] the substance of the demand refusal letters" (36 Misc 3d at 306). Accordingly, the IAS court stated, it would consider the refusal letter, and would consider the claims in the amended complaint under the "wrongful refusal of demand" standard (*id.*).

With respect to the merits, the court found that the amended complaint failed to allege particularized facts creating a reasonable doubt about the Board's reasonableness and good faith in investigating plaintiff's demand. Indeed, the court found, the refusal letter included facts regarding the steps that the demand committee took in investigating plaintiff's demand. Additionally, the court determined, the facts that plaintiff had alleged—for example, that the demand committee had only one member—were insufficient to raise doubt about the good faith of the committee's investigation. The court therefore concluded that the business judgment rule shielded the Board from further inquiry, and that, as a result, plaintiff lacked standing to pursue the derivative claims arising out of the demand.

To begin, the IAS court properly denied plaintiff's motion to compel discovery. The parties disagree on whether New York or Delaware law governs discovery. Plaintiff argues that the availability of discovery is procedural, not substantive, and therefore is governed by the law of the forum. Thus, plaintiff argues, New York law governs, and the law in New York provides that discovery is available concerning a decision of a board of directors not to pursue a claim on behalf of a corporation (citing *Parkoff v General Tel. & Elecs. Corp.*, 53 NY2d 412 [1981]). Defendants argue, on the other hand, that Delaware's discovery rules are part of its substantive law, and thus, that Delaware law applies to foreclose plaintiff's discovery request. At any rate, defendants argue, no matter which law applies, the result would be the same, as plaintiff was not entitled to discovery under the law of either New York or Delaware.

Because New York is the forum state, New York's choice-of-law principles determine whether a particular issue—in this case, the availability of discovery—is substantive or procedural (*see Tanges v Heidelberg N. Am.*, 93 NY2d 48, 54 [1999]). Under New York choice-of-law rules, matters of procedure are governed by the law of the forum (*id.* at 53; *Marine Midland Bank v*

*United Mo. Bank*, 223 AD2d 119, 122 [1st Dept 1996], *lv dismissed* 88 NY2d 1017 [1996]). On the other hand, New York choice-of-law rules provide that substantive issues such as issues of corporate governance, including the threshold demand issue, are governed by the law of the state in which the corporation is chartered—here, Delaware (*Hart v General Motors Corp.*, 129 AD2d 179, 182 [1st Dept 1987], *lv denied*, 70 NY2d 608 [1987]).

■ We find that plaintiff's right to discovery in this demand-refused case is a substantive question, rather than a procedural one, and therefore is governed by Delaware law. Although New York courts have applied the law of the forum when deciding matters, such as discovery, affecting the conduct of the litigation (*see e.g. People v Greenberg*, 50 AD3d 195, 198 [1st Dept 2008], *lv dismissed* 10 NY3d 894 [2008]; *see also Paris v Waterman S.S. Corp.*, 218 AD2d 561, 564 [1st Dept 1995], *lv dismissed* 96 NY2d 937 [2001]), that this case is a purported derivative action places it into a different context. The demand requirement is based on the " 'bedrock' principle" of Delaware law that a corporation's directors, and not its shareholders, manage the corporation's business (*Levner v Saud*, 903 F Supp 452, 456 [SD NY 1994], *affd sub nom Levner v Prince Alwaleed*, 61 F3d 8 [2d Cir 1995] [quoting *Levine v Smith*, 591 A2d 194, 200 (1991)]). Thus, the Delaware law on discovery is an integral part of the legal framework governing derivative proceedings; indeed, it is inextricably intertwined with the decision to act or decline to act on a shareholder demand. Were Delaware law to permit discovery in a demand-refused derivative action, it would essentially obviate the directors' authority to decide, under the business judgment rule, whether litigation was in the corporation's best interests—the very reason underlying the demand requirement. The decision whether to permit discovery once directors have refused a demand is therefore a substantive question, going directly to the basis of the purported derivative suit (*see In re Boston Scientific Corp. Shareholders Litig.*, 2007 WL 1696995, \*5, 2007 US Dist LEXIS 42540, \*14-15 [SD NY June 13, 2007]; *Levine*, 591 A2d at 208-210).

Under Delaware law, "plaintiffs in a derivative suit are not entitled to discovery to assist their compliance with the particularized pleading requirement of [Delaware Chancery Court] Rule 23.1 in a case of demand refusal" (*Scattered Corp.*,

701 A2d at 77; *Levine*, 591 A2d at 208-210).[3] Indeed, plaintiff concedes this point, arguing instead that the case law does not appear to address the scenario here, in which a board delegates review to a committee. However, plaintiff cites no Delaware authority for this position; what is more, the case law actually suggests that Delaware law provides otherwise (*Scattered Corp.*, 701 A2d at 71 [refusing discovery even where a committee, rather than the entire board of directors, reviewed the plaintiff's demand]).[4]

Despite plaintiff's argument otherwise, it is of no moment that Delaware has not codified its discovery rule in demand-refused cases. On the contrary, as we have noted above, allowing plaintiff to proceed with discovery would thwart the purposes underlying Delaware's law on demand refusal—specifically, its recognition that deciding whether to pursue litigation is a decision entitled to deference under the business judgment rule (*see Spiegel v Buntrock*, 571 A2d 767, 775-776 [Del 1990]). Indeed, even *Fagin v Gilmartin* (432 F3d 276 [3d Cir 2005]), upon which plaintiff relies for the proposition that codification is a dispositive issue, specifically states, "Of course, judge-made state common law is just as binding as state statutes or state constitutions" (*id.* at 285 n 2, citing 28 USC § 1652). Moreover, the *Fagin* court based its decision largely on the fact that the "use of federal discovery law would probably not lead to forum shopping" because New Jersey law, containing a mandatory discovery rule, was not per se outcome determinative (*Fagin*, 432 F3d at 285 n 2). Here, by contrast, allowing discovery under New York law, as opposed to federal law, would almost certainly lead future plaintiffs to forum shop in an effort to circumvent the Delaware prohibition against discovery.

We also note that, even assuming for the sake of argument that New York law applies, plaintiff would not be entitled to discovery in this demand-refused case. Courts applying New York law in demand-refused cases presume that a board of directors' decision was the exercise of valid business judgment (*Stoner*

---

**3.** Rule 23.1 (a) states, "[T]he complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort" (Del Ch Ct R 23.1 [a]).

**4.** Instead of using discovery as a litigation device in a demand-refused case, plaintiff may proceed under a Delaware statute—specifically, Delaware Code Annotated, title 8, § 220—to inspect minutes, reports, and other books and records of the corporation related to the process and findings of the demand committee and the board (*Scattered Corp.*, 701 A2d at 78, 79).

*v Walsh*, 772 F Supp 790, 800, 806-807 [SD NY 1991] [applying New York law]). Therefore, where, as here, a complaint fails to set forth allegations overcoming the presumption that the board's decision resulted from that valid judgment, courts will properly deny a plaintiff's discovery request (*id.* at 800). Indeed, "[t]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists" (*id.*).

■ Because we have decided that plaintiff is not entitled to discovery, we turn to deciding whether the amended complaint is sufficient to withstand the motion to dismiss, and find that the allegations in the amended complaint are insufficient to support plaintiff's contention that defendants' investigation was unreasonable, uninformed or conducted in bad faith.[5] In particular, plaintiff alleges that nonparty Potter Anderson was conflicted because it had previously represented a Citigroup subsidiary. Plaintiff, however, does not allege that Potter Anderson represented defendants in a prior proceeding involving the same subject matter and plaintiff provides no details in the complaint about the subject matter of the prior representation. Thus, *Stepak v Addison* (20 F3d 398, 403-404 [11th Cir 1994]), upon which plaintiff relies, does not compel the result that plaintiff seeks (*see Sterling v Stewart*, 158 F3d 1199, 1203 [11th Cir 1998]).

Further, plaintiff alleges various structural biases—namely, that the demand committee selected Potter Anderson based, in part, on the recommendation of Citigroup's former general counsel, and the likelihood that the successive members of the single-member demand committee would not recommend that Citigroup sue their fellow directors. However, "[t]he majority view recognizes that independent directors are capable of rendering an unbiased decision even though they were appointed by the defendant directors and share a common experience with defendants" (*Peller v The S. Co.*, 707 F Supp 525, 527-528 [ND Ga 1988], *affd* 911 F2d 1532 [11th Cir 1990] [applying Delaware law]; *see also Auerbach v Bennett*, 47 NY2d 619, 633 [1979]).

Plaintiff notes that Citigroup paid the successive members of the demand committee substantial sums to be directors. However, a director is not interested with respect to all board

---

5. Plaintiff does not dispute that Delaware substantive law applies to the underlying claims asserted in this action.

decisions merely because he or she is paid to be a director (*see e.g. In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A2d 808, 821-824, 823 n 48 [Del Ch 2005]; *see also Grobow v Perot*, 539 A2d 180, 188 [Del 1988], *revd in part on other grounds by Brehm*, 746 A2d at 253). To be sure, by plaintiff's logic, no paid director could ever properly vote to reject a demand (*see In re E.F. Hutton Banking Practices Litig.*, 634 F Supp 265, 271 [SD NY 1986] [applying Delaware law]; *see also White v Panic*, 793 A2d 356, 366-367 [Del Ch 2000], *affd* 783 A2d 543 [Del 2001]).

Plaintiff also criticizes the demand committee's procedures, including that it consisted of only one member. These allegations are insufficient, however, as "there is . . . no prescribed procedure that a board must follow" in responding to a shareholder's demand (*Levine*, 591 A2d at 214). Further, by Delaware law (Del Code Ann, tit 8, § 141 [c] [1]), a board may delegate matters to a committee, and the committee may consist of "[one] or more" directors (*id.*; *see Scattered Corp.*, 701 A2d at 75 n 20). The amended complaint also alleges that the demand committee retained counsel and that Potter Anderson gathered as many as 15 million documents and billed at least $2 million. Thus, given Delaware precedent, we find that defendants' investigation was sufficient (*see Levine*, 591 A2d at 214).

■ Finally, we find that the IAS court providently exercised its discretion in refusing to convert the dismissal motions into summary judgment motions (*see* CPLR 3211 [c]), as the record "does not establish that the parties deliberately chart[ed] a summary judgment course" (*Wadiak v Pond Mgt., LLC*, 101 AD3d 474, 475 [1st Dept 2012] [internal quotation marks omitted]). Indeed, defendants stated, both on the motions and on appeal, that they do not consider the refusal letter to be documentary evidence. Instead, they offered the letter to show that the instant action was a demand-refused case rather than a demand-excused case, and to the extent that the IAS court considered the refusal letter for that limited purpose, its consideration was proper (*see generally Levine*, 591 A2d at 212).

To the extent that the IAS court, in rendering its decision on defendants' motions to dismiss, relied on facts found only in the refusal letter, the court's action does not require reversal. The amended complaint did not surmount the pleading standard for demand-refused cases, and the IAS court's dismissal of the complaint properly rests on that basis.

We have considered plaintiff's remaining contentions and find them unavailing.

Accordingly, the order of the Supreme Court, New York County (Bernard J. Fried, J.), entered May 5, 2011, which denied plaintiff's motion to compel discovery and convert defendants' motions to dismiss into motions for summary judgment, should be affirmed, without costs. The appeal from the order, same court and Justice, entered May 17, 2012, which granted defendants' motions to dismiss the amended complaint, should be deemed an appeal from the judgment, same court and Justice, entered June 5, 2012, and, so considered, the judgment should be affirmed, without costs.

RICHTER, MANZANET-DANIELS and GISCHE, JJ., concur.

Order, Supreme Court, New York County, entered May 5, 2011, affirmed, without costs. Appeal from order, same court and Justice, entered May 17, 2012, deemed an appeal from the judgment, same court and Justice, entered June 5, 2012, and so considered, said judgment affirmed, without costs.